AMERICAN LIFE & ACCIDENT INS. CO. *v.* NIRDLINGER.

[73 South. 875, Division A.]

1. INSURANCE. *Health insurance. Confinement to house.*
    Where a clause in a health insurance policy provided for indemnity during the period insured was necessarily and continuously confined within his house by reason of illness, insured cannot recover during the period in which he visited his store almost every day, though he lay down there most of the time and was unable to attend to his business.

2. INSURANCE. *Construction of policy. Unambiguous provisions.*
    Contracts of insurance, where the terms are plain and unambiguous, are to be construed like any other contracts between the parties. It is only where the terms are ambiguous or doubtful that the doubt is to be resolved in favor of the insured and against the insurer.

3. HEALTH INSURANCE. *Confinement to house. Orders of physician.*
    Under a health insurance policy a clause providing for indemnity during the time insured is confined to his house by illness, is to be liberally construed to give effect to the intent and purpose of the contracting parties and means that when the insured is ill enough to be confined to his house and is so confined, except when he gets up under the advice of a physician in order to try to improve his health, when a recovery may be allowed.

4. HEALTH INSURANCE. *Chronic disease.*
    In a health insurance policy a clause limiting liability in cases of venereal or chronic disease, the expression "chronic disease" is ambiguous and must be construed against the insurer as being limited to diseases of like character with venereal disease and does not include chronic malaria.

APPEAL from the circuit court of Lauderdale county. HON. W. W. VENABLE, Judge.

Suit by Elizabeth Nirdlinger against the American Life & Accident Insurance Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court,

*W. C. Sams,* for appellant.

The court erred in granting instruction two as asked for by the plaintiff, appellee herein. The contract of Insurance, pages 9 and 10, speaks for itself and by this instruction the jury was excluded from considering the testimony of Dr. Hairston and the testimony of D. Spalding who testified that Estivor Autumnal fever was chronic and was a most malignant type of fever. For it was question of fact to be considered by the jury and should not have been excluded from the jury by instruction two granted to the plaintiff.

The court erred in refusing instructions two and three asked for by the defendant and found in the record. The court, in refusing said instruction two had in mind the case of the *Insurance Co.* v. *King,* found in 102 Mississippi 478. This court will readily see that the case at bar is in no sense similar to the King case in 102 Mississippi and that the King case does not control the case at bar.

There are two different clauses in the policy, Exhibit A., record page 10, of the case at bar that have equal weight and bearing in the contract of insurance, to-wit: "E" and "H." The record in this case shows that C. J. Nirdlinger suffered from a non-confining illness. This being true, under section "E" of the contract of insurance, record pages 9 and 10, the beneficiary was entitled, as illness indemnity, to only fifty dollars a month, this without considering clause "H" of the said contract which specifies where the disability of illness results wholly or in part from chronic disease, the limit of the company's liability shall be one-fourth of the amount which would otherwise be payable under this policy (which is twenty-five dollars a month) and the limit of the company's liability under this paragraph shall not exceed two months disability. Clearly then, if C. J. Nirdlinger's disability resulted wholly or in part from chronic disease, then the beneficiary would be entitled to only

twenty-five dollars a month and for a period of only
two months, instead of one hundred dollars a month as
provided for in first part of clause E of said contract.

The testimony clearly shows that C. J. Nirdlinger was
suffering from chronic malarial fever, or Estivor Autum-
nal, which was testified to both by Dr. Hairston and Dr.
Spalding as being chronic. That being the case, the
second instruction asked for by the defendant, should
have been granted by the court leaving it with the jury
to decide from evidence whether the decease of C. J.
Nirdlinger was chronic or not and if it wholly or in part
disabled him.

As stated above, by careful reading of the King case
in 102 Mississippi, it will be seen that the case at bar is
altogether dissimilar, also that the contract of insurance
in the King case is entirely different from the contract
of insurance in the case at bar. In the King case, clause
"E" requires that the insured be continuously confined
within the house, and clause "H" comes along and uses
the word disabled. Those two terms are taken together
and construed by the court in the King case, that the
meaning of the clauses taken together, and that the test
of the right to recover in that particular policy, depends
upon whether he was disabled during the time limit to
perform the duties required of him by his employment.

Clause E of the contract of insurance in the case at bar,
does not provide that the insured shall be necessarily and
continuously confined to his house but "within the
house." A discussion of this expressed phraseology is
found in the case of *Sales* v. *Massachusetts Protective
Association*, 70. N. H. 490, 48 Atl. 1084. In this case,
the court holds as follows: "The expression 'to the
house' does not mean the same as 'in the house' (with-
in the house). The expression 'to' signifies direction, in,
regard to that appurtenant; while 'in' (within) signifies
the quality of being interior. Strictly speaking, the con-
tract of insurance herein, see record page 10, it is pro-
vided that the insured shall be necessarily and contin-

uously confined within the house and also that the insured shall therein (meaning within the house) be regularly visited at least once a week by a regular qualified physician, etc.

In order to fully meet various holdings of the courts in various states, clause E in the contract of insurance in the case at bar, provides, that if the insured suffers from a non-confining illness, though wholly and continuously disabled from performing any act or duty pertaining to any business or occupation, though not confined within the house and requiring the regular attendance of a physician, the company will pay an indemnity of one-half of the above rate or one-half of one hundred dollars per month, etc.

The decisions of the court are left to rest and depend separately and in each case that comes before them upon each and every contract of insurance, upon the stipulations and terms of each and every contract of insurance that forms the basis of the suit or claim.

The court, in the case of *Cooper* v. *Phoenix Accident and sick Benefit Association,* 141 Mich. 478, 104 N. W. 734, holds that where a sick benefit policy provides for allowance while the insured is necessarily, entirely and continuously confined to the house, there can be no recovery for the period which the insured went out for airings, although he acted under his physician's orders. The said court, discusses, in its decision, the holding of *Hoffman and Michigan Home and Hospital Association,* 128 Mich. 323, 54 L. R. A. 746, and observes the difference in the terms of the policy of the last-mentioned case and the one under its consideration and said: ''In the case now before us, the words are 'necessarily, entirely, and continuously confined to the house.' The contract is not one of indemnity for disability caused by felon. It is only when resulting disability is of such nature that the holder of the policy is necessarily, entirely and continuously confined to his house that indemnity is promised. If the provision had been written expressly to meet and

avoid effect of the reasoning in the case referred to (Hoffman case), it could not have well been made stronger.''

In the case of *Bishop* v. *United States Casualty Company*, 99 App. Div. 530, 91 N. Y. Supp. 106, wherein the policy considered insured against disease ''Necessitating continuous confinement indoors and treatment by a regular qualified physician,'' the court said: ''It seems clear that the plaintiff would not be entitled to recover the weekly indemnity unless his physical disability was such as reasonable to necessitate continuous confinement to his house and medical treatment. In other words, no matter what the cause of the malady moved upon and no matter what may have totally disqualified him from performing his business, if it did not require him to remain indoors and if the professional services were not reasonable required, it was not within contemplation of the contract that the insured have indemnity, etc.''

In the case of *Liston* v. *N. Y. Casualty Company*, 58 N. Y. Supp. 1090, the court held, where the policy provided that no disability shall constitute a claim—where the claimant is able to leave his bed or house . . . nor during any period of convalescence. The court held that no recovery could be had for the time subsequent to the date that the insured left his bed, and out for air and recreation, made a visit out of town for his health, especially where there was evidence that the physician visited him only once.

It is to be observed that clause E of the contract of insurance of the case at bar provides for one-half the usual indemnity where the insured is convalescing or from the time when the illness is non-confining and that part of the clause or any other clause.

In *Schneps* v. *Fidelity and C. Company*, 101 N. Y. Supp. 106, it was held by the court that where the policy provides for payment in case of disability and the necessity of confinement to the house, there can be no recovery unless there is evidence of necessary confinement to the

house as well as a disability. To the same effect was *Dunning* v. *Massachusetts Mutual Accident Association,* 99 N. E. 390, 59 Atl. 535.

Where an accident policy provides for benefits when insured is wholly incapacitated from transacting any and every kind of work or business pertaining to his occupation and as results thereto, be confined to the house or bed, he cannot recover benefits after he goes to his store and stands around a couple of hours superintending his business." See *Shirts* v. *Phoenix Accident and Sick Benefit Association,* 135 Mich. 439, 97 N. W. 966, which is very similar.

The same case holds that the circumstances in the case of Hoffman and Michigan Home and Hospital Association, were so different from the case under consideration, that the rule as set out in the Hoffman case did not apply. This case seems to be nearer in point with the case at bar than any other case appellant has been able to find.

The insured in the case at bar, as shown by the testimony, went regularly to his place of business, getting there in the morning as early as seven o'clock and remaining there during the most of the day, attending to and superintending his business, though the testimony shows that the insured had a cot in the rear of his office building where he would lie down when his services were not needed in the front of his building.

*Ewell & Cameron,* for appellee.

After the pleadings and evidence was in, the court held, and properly, we submit, that there were two reasons why that portion of section H. didn't apply. One was that the clause, "venereal and chronic disease" could be interpreted on the principal "*ejusdem generis,*" that the word chronic meant in its connection (it was not disconnected) a chronic disease of like kind and character as venereal, in other words, a chronic, venereal disease.

The other reason was that the clause didn't cover a chronic condition caused by illness was not the result of

chronic disease. We think either or both of these reasons are good and that the court properly instructed the jury in instruction No. 2. It has always been the writer's idea that a party once tendering, must continue to tender, that he could not play hot and cold. But, it seems that counsel for appellant in this case comes into contact with both the heater and the refrigerator.

The evidence shows overwhelmingly that Nirdlinger was entitled to full benefits under the policy. The policy must be construed favorable to insured. He was practically, continuously, certainly and necessarily confined "within the house." There is not the slightest hint of fraud in this case. He was too ill to run any part of his jewelry office or to act as salesman. The few things he did do were just the result of will-power. His house was his home at night, and the little bedroom in the back of the store his home in the daytime, now occupied by a vacant cot, and on which he waited the call of the reaper, now and then rousing and pushing back his sufferings to make some change for a friend or something of that kind.

And these friends all unite in saying that Nirdlinger was a very sick man for three months and more before he died. The *King Case,* 102 Miss. 470, is directly in point, in our judgment, and we cite further the following cases and notes: *Jennings* v. *Brotherhood A. Co.* (Col.) 18 L. R. A. (N. S.) 109; *Bried* v. *Verem* (Neb.), 23 L. R. A. (N S.), page 359, the court will find several of the authorities cited, now cited by counsel and the case in which they were cited was decided adversely to those citations, to-wit: *Bishop* v. *U. S. Casualty Company,* 91 N. Y. 1061; *Dunning* v. *Mass & Co.* 99 N. E. 399; *Shirts* v. *Phoenix,* 135 Mich. 439. The jury heard the facts and they made their decision on those facts.

SYKES, J., delivered the opinion of the court.

The appellee filed suit in the circuit court of Lauderdale county against the appellant accident insurance company,

based upon a health and accident insurance policy issued by the appellant insuring her deceased husband, Charles J. Nirdlinger, and agreeing in said policy to pay him certain amounts a month while sick or disabled. While this policy was in force the insured became ill and died before the institution of this suit. The declaration alleges that the deceased became ill on the 14th day of May, 1914, and was totally disabled from attending to any business up to and including the date of his death, which occurred on August 5, 1914. The appellee sued for one hundred dollars a month for a period of three months under clause E of the said insurance policy, which clause reads as follows:

"At the rate of one hundred and no one-hundredths dollars per month for the number of consecutive days, after the first week, that the insured is necessarily and continuously confined within the house, and therein regu-. larly visited at least once a week by regularly qualified physician by reason of illness that is contracted and begins after this policy shall have been maintained in continuous force for sixty days; or, if during convalescence immediately following said confinement, or if by reason of any nonconfining illness, the insured shall be wholly and continuously disabled from performing any act or duty pertaining to any business or occupation, though not confined within the house, and shall require the regular attendance of a physician, the company will pay an indemnity at one-half the above rate for a period not exceeding two (2) consecutive months: Provided, that the combined period for which indemnity shall be paid under this paragraph for any one illness shall not exceed six (6) consecutive months: Provided, further, should disability be caused or contributed to by rheumatism, tuberculosis, paralysis, sciatica, neuritis, Bright's disease, lumbago, cancer, hemorrhoid, dementia or insanity, the company's liability shall be limited under this paragraph to a period not exceeding one month during any one policy year."

113 Miss.—6

On the trial of this cause the lower court gave the following instruction for the plaintiff:

"The court charges the jury for the plaintiff that if you believe from a preponderance of the testimony that Chas. J. Nirdlinger was wholly and continuously prevented from attending to his usual and regular duties about his regular business by reason of his illness, then your verdict must be for the plaintiff, and in such sum as will cover such disability at one hundred dollars per month for the time so disabled, in all not to exceed the sum sued for."

The giving of this instruction is one of the assignments of error. This instruction is predicated upon the theory that if the insured was wholly and continuously prevented from attending to his regular business by reason of his illness, then a recovery for the full amount could be had. There are two kinds of accident or health insurance policies. One kind, commonly called an occupation policy, provides for the payment of certain premiums during the time that the insured is totally or partially disabled from performing any or all his duties pertaining to his occupation or business. The other kind of policy is a general accident and health policy which does not make the payment of these premiums depend solely upon the total or partial disability of insured from pursuing his occupation or calling, but rather makes the payment of premiums dependent upon the insured's being confined either in bed to his house or home, or within the house. The policy in question is of the latter character. It makes the payment at the rate of one hundred dollars a month dependent upon the insured's being "necessarily and continuously confined within the house, and therein regularly visited at least once a week by a qualified physician by reason of illness that is contracted and begins after this policy shall have been maintained," etc.

This clause also provides that: "If by reason of any nonconfining illness, the insured shall be wholly and continuously disabled from performing any act or duty per-

taining to any business or occupation, though not confined within the house, and shall require the regular attendance of a physician, the company will pay an indemnity at one-half the above rate for a period not exceeding two (2) consecutive months.''

The testimony in the case shows that the deceased was ill for the three months, but that during this time he went from his home to his store in Meridian almost if not every day; that he had a cot in the back of the store and would lie down a great part of the time; that he sometimes waited on customers and helped his wife with the management of the store. He also made a trip to Stafford Springs and another to Cooper's Wells during his illness. The testimony does not show whether he was confined to his room or bed at either of these health resorts. Neither does the testimony show whether or not during any of the time he was in Meridian he was confined to his house and unable to go to the store. It is the contention of the appellee in this case that she can recover under the authority of *Insurance Co.* v. *King,* 102 Miss. 470, 59 So. 807. In the King Case there were two policies upon which suit was brought, one a special occupation policy, the other a policy of insurance covering life insurance combined with a weekly indemnity for sickness and accident, the latter policy being quite similar to the one in this case. In passing upon the special occupation policy, Justice COOK had the following to say:

''The purpose of this policy was to indemnify appellee against loss of time in the occupation which he was following, and, while paragraph (e), taken alone, seems to make his confinement to his room continuously a condition precedent to his right of recovery, yet, read in connection with paragraph (k), it seems clear to us that the real test of his right of recovery depends upon whether he was disabled, during the time limit, to perform the duties required of him by his employment. It therefore follows that the trial court was right in directing the jury to find for forty dollars under this policy.''

In the King Case the appellee was confined to his bed
for a week, and then called in a doctor. The doctor ad-
vised him to get up as much as possible and take exercise.
Acting on this advice of his physician, the plaintiff did
at intervals get out bed and attempt to take exercise,
which caused pain and inconvenience. The evidence also
showed that the plaintiff in that case sometimes went out
of the room into the yard. In the King Case it will be
noted, however, that the reason why King left his bed
was because of his doctor's instructions. In the other
policy in that case, paragraph 3 provided that weekly
benefits for sickness will only be paid when the assured
has been confined strictly to his or her bed for seven
consecutive days. Justice Cook, as to this paragraph,
says:

"The evidence shows that he was confined to his bed for
seven consecutive days, and we find no provision in this
policy which excludes the first week of sickness from the
benefits of the indemnity."

Clause E in the policy in suit provides that the total
premiums of one hundred dollars a month are only due
when the insured has been "necessarily and continuously
confined within the house," etc. It in no way makes the
recovery of this amount dependent in any manner upon
the disability of the insured to follow his usual avocation.
In this case the insured was not necessarily and contin-
uously confined within the house. He was not going to
his place of business under the advice of any physician.
This being true, a right of recovery in this case would
come under the nonconfining illness clause above quoted,
at least for the time that the plaintiff went to the store.
The nonconfining clause somewhat resembles the occu-
pation policy, in that it allows this recovery, provided
the insured is wholly and continuously disabled from per-
forming any act or duty pertaining to any business or
occupation. These contracts of insurance, where the
terms are plain and unambiguous, are to be construed
like any other contracts between parties. It is only where

the terms are ambiguous or doubtful that the doubt is to be resolved in favor of the insured and against the insurer.

There are a great many cases construing the meaning of policies requiring that the insured must be confined to his bed, or to the house, or within the house. In a number of these cases, as in the King Case, the insured had gone out of the house on the porch under the advice of his physician. A majority of these cases hold that this would not prevent a recovery. This clause is to be liberally construed to give effect to the intent and purpose of the contracting parties, and means that when the insured is ill enough to be confined to his house and is so confined, except when he gets up under the advice of a physician in order to try to improve his health, then a recovery may be allowed. A few courts strictly construe similar clauses in insurance policies, but the decided weight of authority is to give such clauses a liberal construction. Similar clauses have been passed upon and discussed in the following cases: *Scales* v. *Masonic Protective Association,* 70 N. H. 490, 48 Atl. 1084; *Cooper* v. *Phoenix Accident & Sick Benefit Association,* 141 Mich. 478, 104 N. W. 734; *Hoffman* v. *Michigan Home & Hospital Association,* 128 Mich. 323, 87 N. W. 265, 54 L. R. A. 746; *Bishop* v. *U. S. Casualty Co.,* 99 App. Div. 530, 91 N. Y. Supp. 176; *Liston* v. *N. Y. Casualty Co.,* 28 Misc. Rep. 240, 58 N. Y. Supp. 1090; *Schneps* v. *Fidelity & Casulty Co.,* 101 N. Y. Supp. 106; *Dunning* v. *Massachusetts Mutual Accident Association,* 99 Me. 390, 59 Atl. 535; *Shirts* v. *Phoenix Accident & Sick Benefit Association,* 135 Mich. 439, 97 N. W. 966.

It therefore follows that it was reversible error for the court below to give the above instruction to plaintiff.

The testimony of a physician, who was called in to see the insured about two months after this policy was issued, is that at that time the insured was suffering with Estivor Autumnal fever, which is chronic malarial fever. This physician was unable to testify whether the

insured was so suffering at the time this policy was taken out. Clause H in this policy, among other things, provides as follows:

"All disability or illness resulting wholly or in part from strains, or from hernia, orchitis, venereal or chronic disease, . . . the limit of the company's liability shall be one-fourth of the amount which would otherwise be payable under this policy, and the limit of the company's liability under this paragraph shall not exceed two month's disability, anything herein to the contrary notwithstanding."

A physician who testified for the defendant gave it as his opinion that the insured must have been suffering with this chronic malaria at the time the policy was issued. The appellant was refused the following instruction:

"The court instructs the jury for the defendant that if they believe from the evidence in this case that C. J. Nirdlinger suffered from Estivor Autumnal fever, and that it was chronic, and that he at the time of his application to defendant herein for insurance and at the time said insurance was issued to him had this above-named fever, then the jury cannot find for the plaintiff in the sum greater that fifty dollars.

"The court further instructs the jury for the defendant that if from the testimony they should find for the plaintiff in computing the damages, they are restricted to the time from May 14, 1914 to August 5, 1914."

The appellant contends that under the testimony of these two physicians it was a question of fact to be decided by the jury whether or not the insured was suffering from this chronic malaria at the time this policy was issued. That if he was, then his recovery would be limited to one-fourth of the amount otherwise payable under this policy for two months under clause H. The meaning of this clause is ambiguous. Therefore, construing the same against the insurer and in favor of the insured, the words "venereal or chronic disease," without the word "disease" following the word "venereal," and with no

comma or other punctuation mark between them, we think, its meaning here is chronic disease of like character with venereal diseases. It therefore follows that the court was correct in refusing this instruction asked by the appellant.

*Reversed and remanded.*