### ÆTNA LIFE INS. CO. v. WILLETTS.

(Circuit Court of Appeals, Third Circuit. June 20, 1922.)

No. 2835.

Insurance ☞525—Clause in health policy, "necessarily confined to house," construed to mean within doors, and not to particular house.

Where a health insurance policy covered disability from disease contracted during the term of insurance, preventing insured from prosecuting any and every kind of business and necessarily confining him to the house, the clause "and be necessarily confined to the house" was not intended to describe a course of conduct for insured, but referred to a condition of illness and disability which made confinement within doors a necessity, and insured was not precluded from recovery because, on the advice of physicians, he unsuccessfully sought relief at divers times in different climates.

[Ed. Note.—For other definitions, see Words and Phrases; second Series, Necessarily Confined to House.]

In Error to the District Court of the United States for the Western District of Pennsylvania; W. H. Seward Thomson, Judge.

Action by Ernest W. Willetts against the Ætna Life Insurance Company. Judgment for plaintiff, and defendant brings error. Affirmed.

John G. Frazer, W. L. G. Gibson, and Reed, Smith, Shaw & Beal, all of Pittsburgh, Pa., for plaintiff in error.

Homer N. Young and Robert R. Elder, both of Pittsburgh, Pa., for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. This suit is brought by Ernest W. Willetts, a citizen of Pennsylvania, against the Ætna Life Insurance Company, a corporate citizen of Connecticut, to recover on two health indemnity policies, the pertinent parts of which are quoted in the margin.[1] The particular clause involved is the application of the words

---

[1] "If the insured shall, by reason of any disease contracted during the term of this insurance and not herein excepted, be totally disabled, that is, wholly and continuously prevented from prosecuting any and every kind of business pertaining to his occupation and be necessarily confined to the house, the company will pay the sum of fifty and no/100 dollars per week, and if, immediately following such a period of total disability and confinement

"be necessarily confined to the house" to the facts of this case. In his charge, the judge below said:

"These words, 'and be necessarily confined to the house,' must be given a reasonable construction. They did not mean necessarily confined continuously within the walls of the house in which the insured lived. They referred to a condition of illness and the disability which makes confinement in the house— that is, within doors—a necessity. These words were not intended to describe a course of conduct to be followed by the insured. Not at all. But they were intended to describe a condition of disability which must exist in order to recover the designated benefits. To construe these words as requiring the insured to be confined in the house all of the time during the period in question, though a change to another house or another place, either near or remote, might greatly alleviate his sufferings, improve his condition, and hasten his recovery, would not only be wholly unreasonable, but it would tend to perpetuate the disability, to the detriment and loss of both parties. * * * I therefore instruct you as a matter of law that if you find these conditions under the evidence, if you find that they exist, that is, total disability as above described, and that he was necessarily confined to the house as I have undertaken to interpret those words, the plaintiff would be entitled to recover the full amount of his claim. * * * If his condition was such as to require necessary confinement in the house, that condition of the policy would not be broken by trips made compulsorily under the advice of his physician for the purpose of additional medical or surgical treatment or a change in climate, in an honest effort to alleviate his sufferings and to effect a cure."

Were the facts such as to justify the court submitting the case to the jury, or should it have given peremptory instructions to the jury? The proofs in this case, which are undisputed, are different from any reported case bearing on a policy of the general character here in question. The insured became seriously ill about December 13, 1917, and was necessarily confined to his house and much of the time to his bed, until February 10, 1918. His illness was some form of bronchitis, which developed into asthma of so serious a nature that he had great difficulty in drawing his breath. During that time, and as well as throughout the period in controversy, he had paroxysms of asthma, shortness of breath with the slightest exertion, even stooping bringing on severe coughing spells. He was constantly attended by a physician while at his own home. During that period he had been visited at his home by an eminent physician of Philadelphia, who was a specialist in his disease, and who desired his presence in Philadelphia for further examination. Accompanied by his own physician, he went to

in the house he shall be totally disabled, that is, wholly and continuously prevented from prosecuting any and every kind of business pertaining to his occupation, but is not necessarily confined in the house, the company will pay three-fifths of said amount."

"If the insured shall, solely by reason of any disease contracted during the term of this insurance and not herein excepted, be totally disabled, that is, for a period commencing during said term be wholly and continuously prevented from prosecuting any and every kind of business pertaining to his occupation, and be necessarily confined in the house, and be regularly treated by a licensed physician, the company will pay the sum of fifty and no/100 dollars per week, and if, immediately following such a period of total disability and confinement in the house he shall be totally disabled, that is, wholly and continuously prevented from prosecuting any and every kind of business pertaining to his occupation, but is not necessarily confined in the house, the company will pay one-half of said amount per week, but no payment shall be made for disability in excess of fifty-two consecutive weeks' duration."

Philadelphia in a Pullman car, used a taxicab to and from the train, which he reached by a wheeled chair. He remained in the hotel overnight, was taken to the hospital, where he remained for about six days under examination and treatment. He then returned to the hotel, where he remained confined for several days. He was advised by the physicians to go to Florida, which he did, leaving Philadelphia about February 27th. He was accompanied in this entire trip by his wife, who was a trained nurse. He remained at the first hotel in Florida about a month. He occasionally sat on the porch, but at all times was confined to the hotel. By advice, he sought a higher altitude, at another hotel in Florida, where he remained all the time in the hotel for about two weeks. In answer to the question whether there were any occasions that he was able to go outside the hotel, and go out on the porch, his wife testified:

"He was not. He should have been in bed the entire time; but he was anxious to get better, and felt, if he could manage to stay up at all, he would. He slept with his feet on the bed and his head on the floor."

He was not improved, but rather injured, by his stay in Florida, and for that reason returned to his home in Pittsburgh, being examined in Philadelphia again on his route home. He remained eight weeks in his home at Pittsburgh, being confined to the house for the entire time. At that time his condition was testified to by his physician, who, when asked what his condition was when he returned from the South, said:

"His condition was about, I think, as when he left. He had as many paroxysms and could move about, but could exert himself very, very little."

After he returned his physician said he was under his care, and he visited him almost daily; that during that time he was mostly in bed, or sitting in a chair. Under advice, he then went to the Maine woods, stopping at Boston on the road, to consult a specialist in a medical school there, and stayed at the home of his wife's family, going to and from the consultant by automobile. He stayed there a few days, part of which time he was up and down in the house, after which he went to the woods in Maine, where he stayed until September 14th, having with him an attendant during the entire summer, and also the company of his wife, who followed him to Maine about the middle of July. During the early part of his stay in Maine, he made a few short rides out on the lake, and indeed one day tried fishing, feeling he was getting better; but his general condition during the time, as testified to by his wife, was that he was a very sick man while she was there; that the attendant was with him, and during all the time he was there he did not go out on the lake or outside the house; that he was very much worse there, and that she felt they would never get him out of Maine; that he made a brief visit in Boston to a specialist, who had wired them he would wait a couple of days in order to see him. Dr. Willetts testified that he made that trip to see him, saying: "I was desperate at that time, and this physician was the last resort in a way." Mrs. Willetts testified that they stopped in Boston "for Dr. Willetts to get enough breath to go home, because I felt he might die." He then returned to Pittsburgh, where he was visited by his physician, who testified that

his condition was still bad. Some time after his return home he was treated by some new remedy, under which he improved so that he was able to leave the house and gradually get back to work, though he has never fully recovered. No question is made as to the right of the insured to receive full indemnity for the period prior to his going to Florida.

These facts were submitted to the jury, and their finding establishes in the plaintiff's favor the issue that during this period the insured's disability was such as required his necessary confinement to the house. We see no error in the court's refusing to give binding instructions to the jury as to that period. That the plaintiff was completely and wholly disabled during this period is not controverted in the proofs, and we think the uncontradicted facts in the case show a situation where reasonably-minded men might take the view that during all that time he was not only disabled, but his illness was such as necessarily confined him to the house. During his travels to and fro, he did not leave the Pullman car. He went to and from the car in a wheeled chair. He went to and from the station, the doctor's office, in a conveyance. The few efforts he made on the lake in trying a boat ride were so few and covered such a short time that they evidence no real departure from house confinement, but simply the ineffective and futile effort of one trying by proper effort to gain the strength to stop confinement in the house. In reaching this conclusion, we have no purpose to depart in any way from the contract in this case, or to minimize the condition that his right to recover for the time here in controversy was only if his disability was such as "necessarily confined to the house."

We are of opinion that no error was committed by the court below, and its judgment must be affirmed.