JOHN P. GARVIN, Appellee, v. UNION MUTUAL CASUALTY COMPANY, Appellant.

978

NOVEMBER 20, 1928.

REHEARING DENIED MARCH 8, 1929.

*Harold S. Thomas*, for appellant.

*Mitchell, Files & Mulholland*, for appellee.

FAVILLE, J.—On or about April 16, 1926, the appellee took out a policy of health insurance in the appellant company. That portion of the policy involved in this appeal is as follows:

"Part III—Monthly Indemnity for Loss of Time—Sickness.

"House Confinement—$80.00 Per Month for Four Years. Section (a) During which the insured shall suffer from any bodily sickness or disease, not hereinafter excepted, which is contracted and begins after this policy has been in force fifteen days, directly preceding, for the number of consecutive days that the insured, by reason of 'such sickness,' shall be strictly and continuously confined within the house.

"Non-house Confinement—$40.00 Per Month for Three Months. Section (b) Immediately following said confinement, or by reason of non-confining sickness, during which the insured shall be wholly and continuously disabled and prevented from performing any and every duty pertaining to his business or occupation.

"Payment for confinement and non-confinement combined shall not exceed a period of four years. During the period of disability for which indemnity is claimed the insured shall be attended at least once every seven days by a legally qualified physician.

"Part IV—Additional Indemnities.

"50% increase for Hospital Confinement—$40.00 per month for two months."

Appellant contends that its liability under the policy, for house confinement, could not, in any event, exceed a period of seventy days, from January 16, 1926, to March 26, 1926, or a total of $186.67; that it could not exceed $120 under the non-house-confinement clause of the policy, and could not exceed $80 for hospital benefits, under the additional indemnity clause; making a total of $386.67. It sought such limitation by the trial court by proper motion. This the court denied; but, as finally submitted, the question of liability was limited to the period from January 16, 1926, to May 16, 1927, and the court left it for the jury to determine for what portion of said time, if any, appellee was entitled to recover under the "house-confinement" clause, and for what portion, if any, recovery could be had under the "non-house-confinement" clause. Hospital benefits were limited to $80. The jury returned a verdict allowing the full amount claimed under the "house-confinement" clause.

It becomes necessary that we briefly review the material evidence in the case. The appellee is a man 34 years of age, married, and a plumber by trade. He was taken sick in January, 1926, and on the 16th day of the month, was unable to get out of bed. He remained in the house about a week, and on or about the 25th or 26th of January, he went to Des Moines, on the interurban, to consult physicians there connected with the Veterans' Bureau. A physician in Des Moines advised him to go to the hospital at Dwight, Illinois. He went back to his home at Fort Dodge, where he remained for about a week, during which time he was in bed. He then again went to Des Moines, and from there went to Dwight, Illinois, on the advice of the Des Moines physician. He was examined in the hospital at Dwight, Illinois, and was ordered to remain in bed, which he did for a period of ten days. The doctor at Dwight then advised him to get up and get out and take the air. He was then able to move about some. He remained at the hospital for about twenty days. The doctors told him to be careful what he ate, to get out in the air as much as possible, and not try to work. He then returned

to Fort Dodge, and remained in bed about seven days. He then went to Kansas City, under direction from the Des Moines physician, for observation. He was there two days, and from there went to Excelsior Springs, upon the doctor's advice. This was about thirty-eight miles. He was there eighteen to twenty-five days. He then returned to Des Moines. At Excelsior Springs, he was told to get out as much as he could, and did so occasionally. He then returned to Des Moines, to see the doctor there, who told him to go home, and be careful about his diet, and not try to work. He advised appellant to get out as much as he could possibly stand it, because it was the only thing left to do at that time. He was advised to go home and keep quiet, and keep away from all noise, and stay out in the open. He then returned to Fort Dodge, to his home. Thereafter, he took outdoor exercise. In June, he went back to Des Moines to see the doctors, who ordered him to go to Chicago to the Edward Hines Hospital. He was there fourteen or fifteen days, and while there, a harness or brace was prepared for him to wear. It was very uncomfortable, and hurt his flesh. When he left the hospital in Chicago, he returned to Des Moines, and consulted his physician there. The doctor again told him to be careful about his food, instructed him not to do any work or try to do anything, and to keep away from noises, and stay out in the open. Appellee's testimony shows that he avoided excitement, did not attempt to perform any work of any kind, and stayed out in the open as much as he could. On May 15, 1927, he returned to Des Moines, and was again examined by the physician, who again instructed him not to try to do any work, and to stay out in the open, and be careful about his food. Appellee testified that he left the house for the purpose of taking exercise; that he would go out before breakfast and walk around the block and come back home; that he was in constant pain, nervous, and could not sleep; that he followed the doctors' instructions as to his diet; and that his condition was at a standstill. His head kept pulling to one side, and he is badly bent over. He testified that, since January, 1926, he had done very little work. In January, 1927, he went out on a farm for two days. In May, 1927, he moved to Des Moines. On cross-examination, he testified that, when his sickness began, he was confined to the house about a week; that, about January 23d, he went down

town, to make preparations for going away; that he went down in the bus, and was gone a couple of hours; that he went to the bank; that he went to Des Moines about January 25th or 26th; that a neighbor took him to the interurban; that he took a taxicab to the Veterans' Bureau, and walked about three blocks to dinner and back; that he went to the depot in a taxicab, and from the depot home in a taxicab. From January 16th to February 8th, he did not have any doctors at the house. He went to Des Moines February 8th, and went to the Veterans' Bureau in a taxicab. All of the doctors he consulted told him to get out and take exercise and be out of doors as much as he could. After he came back to Fort Dodge, on March 26, 1926, he was out of doors practically every day, walking around or driving around. At times, when the weather was good, he walked down town, walked around to the neighbors' houses, went down town, and visited with friends. He purchased a car in the spring of 1926, and drove it some, and his wife drove it some. He said: "I suppose I put on about four thousand miles." He tried to work at a very few odd jobs. He said: "I tried to do lots of things by force, needing the money, and I suffered for it." He also testified:

"I drove my car down to Des Moines in the summer after I got it. I made trips to other places beside Des Moines. I started to work at the fairground sometime in May, 1927, and I worked until September 8, 1927."

He was an overseer, and inspected plumbing in this work. A physician who examined him in May or June, 1926, described his condition. His back was crooked and very tender; he was unable to stand up; he walked with great difficulty, with two canes; was very tender in the spine; there was an inflammatory condition of the joints. He had spinal arthritis. The spinal column or back is stiff almost from the base of the skull to the pelvis. The bone is out of line. Further testimony was given, describing more in detail the physical condition of the appellee. The appellant offered no evidence, and the foregoing is but a general outline of the testimony in behalf of the appellee.

The important question in the case is whether or not, under the record, the appellee is entitled to recover for house confinement for the entire period claimed. There is no contention that

the appellee is malingering, and he has, with commendable frankness, testified with regard to his conduct during the period in question. The policy clearly provides for indemnity for loss of time caused by sickness, and places such loss of time in two distinct classes. One is denominated in the policy "house confinement," the other, "non-house confinement."

Policies of insurance of the: kind herein involved are of comparatively recent origin. Such policies are variously worded. The important question for our determination is the construction to· be placed upon the words in the house-confinement clause of .the. policy, which authorizes recovery for the number of consecutive days that the. insured, by reason of such sickness, "shall be strictly and continuously confined within the house." In some instances, similar policies of insurance use the phrase "strictly and continuously confined *at* the house;" others use the term "*to* the house;" and a distinction has been made in some of the authorities between these different expressions. The instant policy says, "*within* the house."

A few citations will show the trend of authority.

An early case is *Scales v. Masonic Protective ·Assn.*, 70 N. H. 490 (48 Atl. 1084), decided in 1900. In that case, the policy permitted recovery in the event that the illness "shall require absolute, necessary, continuous confinement *to the house.*" The insured remained in the house five days. of his illness, and after that, being advised by his physician to keep in the open air all he could, and to stir around as much as his strength would allow, he was in his dooryard, a portion of the time, sitting in a chair or lying in a hammock. The physician was of the opinion that this would aid recovery. The court said :

"It would be generally understood that a sick person was confined 'to' the house, although he went into the dooryard to take sun baths or get fresh air. To the strict constructionist, the phrase '*to* the house' does not. mean the same as '*in* the house.' "

The court held that the insured was · confined "to" his house, notwithstanding the fact that he spent a portion of the time in the dooryard, as described.

In *Sawyer v. Masonic Protective Assn.*, 75 N. H. 276 (73 Atl. 168),. decided .in 1909, the Supreme Court of New Hamp-

shire again had the question before it, under a policy that provided for liability if the insured was "continuously confined to his house." The court reviewed the *Scales* case, and, construing the policy, held that, if the insured were taken out of the house because the house was on fire, or if he were carried to a hospital in an ambulance, it would not defeat recovery. But where it appeared that the insured was able to walk a quarter of a mile from his house to a barber shop, and went once or twice a week to the office of his physician for treatment, and went to York Beach, on advice of his physician, and consulted a specialist, it was held that a nonsuit should have been granted.

In *Hoffman v. Michigan Home & Hosp. Assn.*, 128 Mich. 323 (87 N. W. 265), decided by the Supreme Court of Michigan in 1901, the policy contained a clause permitting recovery where one was "continuously confined to the house and subject to the personal calls of a registered physician in good standing * * * ." The evidence showed that the insured went to the doctor's office to get some medicine, and that, on the advice of the doctor, he went to Chicago. The court submitted the question to the jury. This was held not to be erroneous. A dissenting opinion was filed in this case.

In *Cooper v. Phoenix Acc. & S. B. Assn.*, 141 Mich. 478 (104 N. W. 734), the Supreme Court of Michigan again considered a case where, under the evidence, it appeared that the insured was not necessarily confined to the house, but, under the advice of his physician, was out of doors at various times. It was held that, upon the entire record, a recovery would not be permitted to stand.

In *Rocci v. Massachusetts Acc. Co.*, 222 Mass. 336 (110 N. E. 972), the Supreme Court construed a clause in a policy which provided that the insured should be continuously *within the house*. Speaking by Mr. Chief Justice Rugg, the court said:

"The word 'continuously,' in its common and accepted significance, means uninterruptedly, an unbroken sequence, without intermission or cessation, without intervening time. While it should not be given a restricted interpretation as applied to the subject-matter, so as to exclude, for example, a transfer of a person seriously ill from his house to a hospital and back again, or other imperative removals, it cannot be extended to include frequent changes from one house to another. Such a

policy of insurance as that here in controversy means that its benefit is payable only to an insured suffering from such serious malady that he is not able to break his confinement to the house with journeys of any substantial character outside its confines. It is too plain for discussion that one cannot be 'continuously confined within the house' and at the same time take a trip to Italy. 'Within the house' naturally means one house, in the absence of some exigency, especially when construed with the next clause, which requires that the insured be 'therein regularly visited by a legally qualified physician.' It is difficult to see how an insured who, as did the plaintiff, remained two weeks in his own house, then went in a carriage to his sister's house in Roxbury, where he stayed two weeks, and thereafter was three weeks in the city hospital, three or four weeks in a different hospital, and then, after another period at home, went to Medford, a city several miles north of Boston, for two weeks, and thereafter was at still another hospital in the south of Boston, can be said, with any due regard to the meaning of words, to have been 'continuously confined within the house and * * * therein regularly visited' by a physician.''

In *Sheets v. Farmers & Merch. Mut. L. & Cas. Assn.*, 116 Kan. 356 (225 Pac. 929), the Supreme Court of Kansas considered a clause in the policy, ''necessarily and continuously confined *within the house.*'' It appeared that the insured left his home and made five calls upon his physician during the period for which he sought indemnity. Recovery was denied.

In *Dunning v. Massachusetts Mut. Acc. Assn.*, 99 Me. 390 (59 Atl. 535), it was held that the clause ''absolute and necessary confinement *to the house*'' was intended to be a conclusive test of liability, and not merely an evidentiary fact bearing upon the question of sickness, and that this requirement was a condition precedent to recovery.

In *Bradshaw v. American Benev. Assn.*, 112 Mo. App. 435 (87 S. W. 46), the clause in question was, ''entirely and continuously confined *to bed.*'' The insured spent most of the hours of the day out of doors, on the advice of his physician, in the open air; took a trip to Texas, and another to St. Louis. Recovery was denied.

In *Reeves v. Midland Cas. Co.*, 170 Wis. 370 (174 N. W. 475), it was held that:

"A health and accident policy which limited full indemnity to the period during which insured should be necessarily and continuously confined within the house, and therein regularly visited by a physician, did not render the insurer liable to pay full indemnity for a time when insured, though merely convalescent, and unable to go out for his ordinary affairs, nevertheless was able to sit on the porch, and make visits to his doctor."

In *Interstate Bus. Men's Acc. Assn. v. Sanderson*, 144 Ark. 271 (222 S. W. 51), the clause construed was, "continuously and strictly within the house." It appeared that the insured made a daily trip to the post office, to get his mail, made trips of four blocks, to get water, and would occasionally sit out in the open in a pavilion. It was held that the clause did not mean that the patient must have been confined within the house every minute or hour, and the fact that he went out occasionally, for the purpose of taking exercise and fresh air, under the instructions of his physician, did not prevent recovery, and that the case presented one for the consideration of the jury.

To the same effect, see *Great Eastern Cas. Co. v. Robins*, 111 Ark. 607 (164 S. W. 750).

In *Hays v. General Assem. Am. Benev. Assn.*, 127 Mo. App. 195 (104 S. W. 1141), the clause permitted recovery when the insured was entirely and continuously confined *to bed*. It was held that a reasonable construction must be given; and while the evidence tended to show that the insured was sometimes out of the bed, sitting propped in a chair, and was occasionally out in the yard, under a shade tree, and on one occasion was driven a few blocks down town in a buggy, a verdict for the insured would not be disturbed.

In *Jennings v. Brotherhood Acc. Co.*, 44 Colo. 68 (96 Pac. 982, 18 L. R. A. [N. S.] 109), the policy provided indemnity for sickness only that should be "continuous, complete, and total, requiring absolute, necessary confinement *to the house* for not less than fourteen consecutive days." The evidence showed that the insured was out nearly every day, by advice of his physician, when the weather was favorable. It was held that recovery was not defeated because the insured, to advance his recovery, took some exercise, and exposed himslf to the healing influence of sunshine and fresh air.

In *Metropolitan Plate Glass & Cas. Ins. Co. v. Hawes'*

*Exrx.*, 150 Ky. 52 (149 S. W. 1110), the clause provided for recovery for the term of disability during which "he shall be continuously and necessarily confined *to the house.*" His physician directed him to get into the open as much as possible, and he did so. He sat on the porch at times. It was held that recovery was permitted.

In *Columbian Relief Fund Assn. v. Gross*, 25 Ind. App. 215 (57 N. E. 145), the policy permitted recovery "during the time he was confined *to the house* and under a physician's care." During the time, he called at his physician's office to receive treatment, and under the advice of his physician, occasionally took exercise in the yard and on the pavement about and near his residence, and at such times, he was in the open air for twenty minutes to half an hour. It was held that the conditions of the policy were not violated; that the acts were done for the purpose of restoring health,—and recovery was permitted.

In *Van Dusen v. Interstate Bus. Men's Assn.*, 237 Mich. 294 (211 N. W. 991), where a party went out for exercise on the advice of his physician occasionally, it was held that recovery was not defeated, under such a policy.

In *Jentz v. National Cas. Co.*, 52 N. D. 688 (204 N. W. 344), the policy used the clause "continuously and actually confined *within the house.*" The court approved an instruction to the effect that the mere fact that a man is able to walk from his house to his doctor's office for treatment, or to take a railroad train to a hospital for treatment, does not necessarily break the continuity of the confinement to the house.

In *Mutual Ben. Assn. v. Nancarrow*, 18 Colo. App. 274 (71 Pac. 423), the Supreme Court of Colorado construed a policy which used the words "confined *to the house,*" and held that they were not "intended to mean a constant restraint within doors," and that recovery could be had, where the plaintiff was confined to the house except at intervals when he rode from his house to a physician's office for treatment.

In *Ramsey v. General Acc., Fire & Life Ins. Co.*, 160 Mo. App. 236 (142 S. W. 763), it was held that, under such a clause, recovery was not defeated where the patient was occasionally out of the house and taken to a physician's office, and that the policy should be construed liberally, and not literally.

In *American Life & Acc. Ins. Co. v. Nirdlinger*, 113 Miss. 74 (73 So. 875), it was held that the clause should be given liberal construction, and that recovery was not defeated because, acting under the advice of a physician, the insured went out of doors, to improve his health.

In *Breil v. Claus Groth Plattdutschen Vereen*, 84 Neb. 155 (120 N. W. 905), the policy permitted recovery in the event that sickness of the insured was such that he "must remain constantly *in the house* and under the care and treatment of a registered physician." The court said:

"That a person 'must remain constantly in the house' does not necessarily mean that one must remain perpetually within the four walls of a house."

The court held that a patient cannot be said not to be confined to his house constantly during an illness of recurrent periods of severity, although at intervals he may occasionally step into his yard, or make visits to his physician, or make other short and usual trips. Recovery permitted. There is an extensive note to this case, as reported in 23 L. R. A. (N. S.) 359.

In *Olinger v. Massachusetts Prot. Assn.*, 221 Mo. App. 405 (278 S. W. 86), it was held that confinement was to be construed in a substantial sense, and not in such a literal sense as to require every moment to be confinement. The same rule was followed in *Musser v. Great Northern Life Ins. Co.*, 218 Mo. App. 640 (266 S. W. 325).

In *Aetna Life Ins. Co. v. Willetts* (C. C. A.), 282 Fed. 26, under a clause permitting recovery where the insured was "necessarily confined to the house," and it appeared that, on the advice of his physician, he had taken trips to different places for his health, the court refused to disturb a finding that the insured's disability was such as required his necessary confinement to the house.

As bearing on the question, other cases might be cited.

It is impossible to reconcile all of the cases that bear upon a clause of somewhat similar import in such policies of insurance. The general and familiar rule is that a contract of this character is to be construed liberally in favor of the insured. This is especially true where there is any ambiguity in the terms used. The parties have a right, however, to make a contract in

whatever form they desire. In the instant case, it is very clear that the contract contemplated indemnity for an illness of different degrees: one whereby the sickness was of such a serious character that the insured was "strictly and continuously confined within the house;" the second described a period of convalescence, or moderate illness, whereby, "immediately following said confinement, or by reason of non-confining sickness," the insured should be "disabled and prevented from performing any and every duty pertaining to his business or occupation."

We are disposed to concur in the view expressed in some of the cases cited, that a too narrow and constricted construction should not be placed upon the terms of this policy. "Strictly and continuously confined within the house" in its most literal interpretation would require that the insured stay constantly within the four walls of the house. Such an interpretation would prevent recovery if an emergency, such as a fire, should arise, and the insured be removed from the house. It would preclude recovery in the event of transportation in an ambulance to a hospital, even for emergency treatment. It would bar recovery if the insured sat upon an uninclosed porch of the house, or slept upon a sleeping porch that was not "inclosed within the house." Such narrow and limited construction should not be adopted in the interpretation of contracts of this character. The record in this case disclosed that, for certain periods of time described in the evidence, the insured was in fact strictly and literally confined within the house, and during a portion of said time, was confined in bed. There is no question, under this contract, of his right to recovery for such period of time. Nor do we think that the insured is deprived of his right to recover for such period of time as he was temporarily absent from his house for consultation with a physician in the town where he lived.

But the record in the instant case calls for a determination of the question as to whether the terms of the policy can be so extended as to include journeys made by the insured from his home to distant points, which were made under the advice of a physician, and in quest of health. The undisputed record shows that the insured went from his home in Fort Dodge to Des Moines, to Excelsior Springs, to Dwight, Illinois, all under the advice of his physician, for treatment, and that he was under treatment, and substantially all of the time confined within a

hospital, while at said places. We are disposed to hold that the true purpose and intent of the contract of insurance, when liberally construed, were to cover a contingency of this kind. It does not provide that the house referred to must be his home. Certainly, if he were confined within a hospital, it would be "within the house," within the meaning of this policy. Appellant's motion was a demand that the right of the appellee to recover for indemnity under this clause be limited to the period from January 16, 1926, the inception of his illness, to March 26, 1926, when he returned to his home at Fort Dodge from the trips he had made to consult physicians, which terminated the time when he had been confined in the various hospitals. We are disposed to the view that the court should have sustained appellant's motion at this point, and instructed the jury that, under the undisputed evidence in the case, the appellee was not entitled to recover under the so-called house-confinement clause for a period in excess of seventy days, to wit, from January 16, 1926, to March 26, 1926. For how much of said time the appellee was entitled to recover under said clause of the policy was a question for the jury.

With regard to the period after March 26, 1926, for which appellee claims recovery under the house-confinement clause, it appears that the appellee was out of doors a large part of the time, until he secured employment, on May 16, 1927; that he purchased a car, and either drove or rode in it some four thousand miles; and that during said time he sought employment away from home. He contends that he did this because of the fact that his physician advised him to take exercise "out of doors" and "get out in the air." Under these circumstances, did appellee still come within the provisions of the house-confinement clause of the contract? We do not so construe it.

Under the record which we have previously recited, it would be doing violence to the contract to hold that, during this period of time, while the appellee was about the premises and other places, taking automobile rides and going apparently where inclination directed, he was within the house-confinement clause of the policy. We are of the opinion that the court erred in submitting to the jury the question as to whether or not the appellee was entitled to recover under the so-called house-confinement clause of the policy after the date of March 26, 1926;

and should have limited appellee's right to recover under this clause of the policy to said date. The right of appellee for hospital benefits and for the non-house-confinement period of three months before he obtained employment is not seriously questioned by the appellant, and we think appellee was entitled to recover therefor, under the record. For the error pointed out in submitting to the jury the question of the right to recover for house confinement for any period beyond March 26, 1926, the cause must be, and it is, reversed.

The costs in this court will be taxed one half to the appellant and one half to the appellee.—*Reversed.*

STEVENS, C. J., and EVANS, KINDIG, and WAGNER, JJ., concur.