SAM WADE *v.* MUTUAL BENEFIT HEALTH & ACCIDENT
ASSOCIATION

(No. 8005)

Submitted November 22, 1934. Decided December
18, 1934.

*Sanders & Crockett* and *Walter G. Burton,* for plaintiff in error.

*G. W. Howard* and *Christie & Christie,* for defendant in error.

MAXWELL, JUDGE:

This writ of error presents for review a judgment of the circuit court, on verdict, for $2,188.19, in favor of Sam Wade, plaintiff, and against Mutual Benefit Health & Accident Association, a corporation, defendant.

The action is on a health-accident insurance policy issued by the defendant to the plaintiff June 20, 1929. Under the head of Illness Indemnities, the policy requires the insurer to pay the insured $200.00 per month for disability resulting from disease "which confines the Insured continuously within doors and requires regular visits therein by legally qualified physician; provided said disease necessitates total loss of time." For non-confining illness resulting from disease, the policy requires payment of $100.00 per month. The policy also provides for hospitalization expenses not exceeding $150.00 per month. Plaintiff's gross claim was for $2,-860.00 composed of these items: twelve months of confining illness at $200.00 per month, $2,400.00; one and one-half months of non-confining illness at $100.00 per month, $150.00; hospitalization, $310.00. The total is credited by plaintiff with two payments made to him by

the defendant, one for $481.66 December 3, 1931, the other for $190.15 February 5, 1932. The residue of $2,-188.19 is the basis of the verdict and judgment.

Plaintiff became ill from appendicitis September 15, 1931. He underwent an appendectomy two days later. Owing to internal infection, it was necessary for him to submit to three subsequent major operations, on the respective dates of December 15, 1931, March 17, and June 12, 1932. In the latter part of November, 1931, plaintiff filed proof of claim accompanied by written statement of his physician, Dr. J. E. Brown. The company responded by paying $481.66 covering the period September 17 to November 14, 1931. In January, 1932, the defendant was notified that the plaintiff was again ill. The plaintiff was visited February 5th by a district manager and an adjuster of the defendant. In the conversation then had, they asserted that the defendant had settled with the plaintiff, but, after some discussion, they agreed to pay him $190.15, which they say was by way of compromise. They exacted of him a release as well as the execution of a rider to be attached to the policy, both of which writings purported to relieve the defendant of all liability on account of the plaintiff's illness. On the same date, before payment was made, the plaintiff submitted a supplemental proof of claim and the physician's additional statement. Plaintiff's next demand of the company was made in the spring of 1933.

During the period for which the plaintiff claims full indemnity (house confinement), October 1, 1931, to October 1, 1932, he was in his home or the hospital substantially all of the time, but admits that on a few occasions he was out of doors. The physician made many trips to the plaintiff's home to dress the wound in his side following the operations, but, sometimes, when the plaintiff felt able to do so, he would go to the physician's office, about 100 yards distant, to receive treatments. A few times he walked to his own place of business which was nearby, and would rest there for a little while before returning home, but took no active part in the conduct of the business. Occasionally, he would take short walks

for exercise and air. His being out of doors now and then was not for the purpose of amusement or profit but to aid physical recovery. All was done under the advice of his physician who thought that moderate exercise, sunshine and air would be beneficial.

We consider that the plaintiff was totally disabled during the period for which he claims indemnity. Total disability within the meaning of an insurance provision covering such condition, does not mean absolute helplessness. An insured may recover under such indemnity "where, because of injury or illness, he has become unable to do substantially all the material acts necessary to the conduct or prosecution of his business or occupation in substantially his usual and customary manner." *Hayes* v. *Prudential Insurance Co.,* 114 W. Va. 323, 171 S. E. 824. The plaintiff, being totally disabled by disease, *ex necessitate* suffered total loss of time, within the meaning of his policy. But what are the plaintiff's rights under the policy in the light of the condition in the policy that he shall not be entitled to indemnity on the basis of $200.00 per month unless his injury confines him "continuously within doors" during the period of such disability? Does the fact of his occasional departure from within doors, as recited, bar him of the right to indemnification on the basis of $200.00 per month? We answer that it does not. A policy provision requiring continuous confinement within doors must be reasonably construed and applied. 14 Ruling Case Law, p. 1318; *Stewart* v. *Casualty Co.,* 141 Wash. 213, 250 P. 1084, 49 A. L. R. 960 and annotation.

Under circumstances, such as are involved in this case, that is, where an insured person has become totally disabled and has been confined in the house substantially all of the time, and regularly attended by a physician, but has departed therefrom occasionally under medical advice and in furtherance of his efforts to regain his health, the courts generally hold that the house-confinement clause of the policy has been sufficiently complied with and the insured should be indemnified thereunder. The following cases are comprehensive in discussion of prin-

ciple and citation of authority: *Purcell* v. *Washington National Ins. Co.*, (Ore.) 30 Pac. (2d) 742; *Garvin* v. *Union Mutual Casualty Co.*, (Iowa) 222 N. W. 25, 61 Am. Law Reports 633; *Mutual Benefit Health and Accident Ass'n.* v. *McDonald*, (Col.) 215 Pac. 135; *Hoffman* v. *Michigan Home & Hospital Ass'n.*, (Mich.) 87 N. W. 265, 54 L. R. A. 746.

To hold that Sam Wade forfeited his right to full indemnification for the distressing physical ordeal which he has undergone, merely because he did not literally remain within four walls for every hour of the period for which he claims, would be to exalt the letter and submerge the spirit of the contract. He, of course, paid stated premiums for this policy which was to afford him financial protection if he suffered an accident or if illness overtook him. Two bases of indemnity were provided by the contract: Confining illness and non-confining illness, the former rated at $200.00 per month and the latter at $100.00. The association carried the risk, first, of the assured's suffering disability by reason of confining illness, and, second, because of non-confining illness. The basis for the premium charged was the risk assumed. In classifying or subdividing the disabilities underwritten by it, the insurer made the two groupings aforesaid. The phraseology employed to denominate the two groups, respectively, was not intended to prescribe or limit the conduct of the insured, but to describe the condition, extent and degree of illness. *Aetna Life Ins. Co.* v. *Willetts,* 282 Fed. 26. The house-confining group is meant to include physical conditions of such seriousness that the patient must necessarily be indoors, and the second applies to less serious illness. *Necessary confinement within doors* because of illness does not mean an absolute and indubitable constraint, but a practical and intelligent "staying in", the nature of the illness considered.

The plaintiff's infrequent departures from within doors were not such as to imply any lessening of the gravity of his illness. It was of the first degree of seriousness and so remained notwithstanding that a few

times he sought the benefit of a little sunshine and mild exercise.

Other grounds of reversal urged by the defendant are: "(a) The releases executed by plaintiff on December 3, 1931, and February 5, 1932, and the endorsement attached to the plaintiff's policy, of February 5, 1932, are valid and binding and preclude recovery herein. (b) Assuming that the releases were voidable at the time of execution by reason of a mutual mistake, they have been ratified by plaintiff. (c) As a condition precedent to avoiding the release of February 5, 1932, plaintiff must tender back to defendant the sum of $190.15 paid to him for the release. (d) Proof of loss within ninety days after the termination of the period for which defendant was liable was a condition precedent to recovery. Failure to furnish proof within ninety days precludes recovery."

Do the receipts of December 3, 1931, and February 5, 1932, and the releases of the latter date, preclude the plaintiff from recovery?

The check or draft making the payment of December 3, 1931, carried on its face this receipt:

> "In full payment, satisfaction, discharge, compromise and release of any and all claims of liability, which payee, his heirs or beneficiary now claim or might hereafter claim under policy No. 68V-1465 for or on account of injury or illness sustained by Payee on or about 9-17-31 and for any past, present or future loss or disability resulting from injury or illness sustained prior to this date."

The check or draft of February 5, 1932, carried the same receipt except that the date of illness therein stated was December 16, 1931.

The release of February 5, 1932, purported to be a full acquittance of the company of all liability on account of plaintiff's illness commencing on or about December 16, 1931. The consideration was recited to be the aforementioned sum of $190.15 paid by the association to the assured that day.

· The rider or indorsement appended to the policy February 5, 1932, recites that the assured and those claiming under him shall not be entitled to any indemnity on account of appendectomy, hernia or nephritis; that the consideration for the indorsement "shall be any acceptance of any renewal or reinstatement premium on said policy by the Association."·

These efforts on the part of the association to obtain from the plaintiff acquittance of further liability by it do not stand the tests of reason and the law. A policyholder pays premiums on the theory that if he becomes ill his policy will afford him financial protection. Illness comes. He makes a claim (as did the plaintiff late in November, 1931), thinking he is well, but neither he nor his physician can be sure that the recovery is complete, though they may express the opinion that he has fully recovered, as was done in this case. The insurer, however, as a condition precedent to paying indemnity requires the insured to indorse a check or draft carrying a receipt, such as quoted above, purporting to close the matter. This is unfair. The law does not uphold unfairness. An insured is entitled to the protection which he buys and for which he pays substantial premiums.

The receipt, the release and the rider of February 5, 1932, are on no higher plane than the receipt of December 3, 1931. They are sought to be justified on the hypothesis that the amount then paid ($190.15) was by way of compromise of a claim which the defendant denied that it owed, and, therefore, must be treated as an accord and satisfaction. The premise is unsound, because there was no legal ground or bona fide basis on which the company could deny liability for the recurrent illness of December, 1931.

When the association accepted Sam Wade as a policyholder and received his payments of premiums as required by it, it insured him against illness as in the policy defined. It cannot avoid that responsibility by exacting of him receipts and releases meant to limit the liability which by its contract it had assumed. *Hollinsworth* v. *Insurance Co.*, 112 W. Va. 629, 166 S. E. 276. This prop-

osition is emphasized by the fact that the purported acquittances are not supported by valuable consideration. The waiver of a vested right under a contract must rest on valuable consideration. *Charleston Lumber Co.* v. *Friedman,* 64 W. Va. 151, 61 S. E. 815. Cf. 1 Ruling Case Law, p. 184; 1 Corpus Juris, p. 554; *Moore* v. *Maryland Casualty Co.,* (N. C.) 63 S. E. 675, 24 L. R. A. (N. S.) 211; *Woodall* v. *Pac. Mut. Life Ins. Co.,* (Tex.) 79 S. W. 1090; *Harrison* v. *Murray Iron Works Co.,* (Mo.) 70 S. W. 261; *Fire Ins. Ass'n.* v. *Wickham,* 141 U. S. 564, 35 L. Ed. 860.

Defendant's contention that the plaintiff by his conduct ratified the acquittances of February 5, 1932, is not well grounded. True, he did not make further claim until May, 1933. In the meantime he had undergone his third and fourth operations. His explanation for the delay is that he did not know his rights; that on the 5th of February, 1932, the two representatives of the defendant had told him the company would not make to him any further payments on account of his illness attributable to appendicitis, and therefore, for some months he considered the matter closed. These men were witnesses at the trial, and it appears from their testimony that they told Wade, in substance, that the company had theretofore settled with him and did not owe him anything in addition. This is corroborative of Wade's testimony that they told him the company would make no further payments. It follows that the company, having impressed this proposition upon plaintiff's mind, cannot complain that for a period of a few months thereafter he acted in accordance therewith and in ignorance of his contractural rights.

When the plaintiff brought his action he did not repay to the defendant the said sum of $190.15 which it paid to him February 5, 1932, as above discussed. We are of opinion that the plaintiff was not under obligation to make such tender. He was within his rights in treating the said payment as a credit on account. 6 Couch Cyclopedia of Insurance, p. 5129; *Carver* v. *Kansas Fraternal. Citizens,* (Kan.) 176 Pac. 634; *Pearson* v. *Life Ins. Co.,*

(Tenn.) 68 S. W. (2d) 963; *Sutton* v. *Casualty Co.*, (S. C.) 167 S. E. 647.

It is further urged on behalf of the defendant that the plaintiff cannot recover because he did not file with the defendant proof of loss within ninety days after the termination of the period for which the association is liable, as required by the policy. The extreme date to which plaintiff seeks to recover indemnity is November 1, 1932. He made no effort to obtain blanks upon which to make a further proof of loss until the following April. There is a familiar rule of law that proof of loss under a policy of insurance need not be filed where the insurer, within the period in which the proof should be filed, denies liability. *Hetzel* v. *Life Ins. Co.*, 108 W. Va. 22, 150 S. E. 385. The transactions between the plaintiff and the representatives of the defendant on the 5th day of February, 1932, constituted an unequivocal denial by the company of further liability. This, we are of opinion, put the plaintiff in a position where he would reasonably deem it a useless thing to file such proof. The defendant having induced such belief in the plaintiff, cannot now complain that he did not file further proofs within the period contemplated by the policy.

Having reached the conclusion that there is no prejudicial error in the record, we affirm the judgment of the trial court.

*Affirmed.*