HOFFMAN *v.* MICHIGAN HOME & HOSPITAL ASS'N.

1. INSURANCE—SICK BENEFITS—PROOFS OF CLAIM—WAIVER.

Where a sick-benefit insurance company had its own physician examine into a policy-holder's condition during his illness, and, before the time for filing proof of disability had elapsed, notified such holder that nothing would be paid him, because he had a disease not covered by his policy, and because not entirely confined to the house, it was not necessary for such holder to furnish the proofs of claim provided for by the policy before bringing suit thereon.

2. SAME—SEVERITY OF ILLNESS—RIGHT TO INDEMNITY.

Under a sick-benefit insurance policy entitling the insured, in case of total and continuous disability to attend to business, to a specified weekly indemnity while " continuously confined to the house, and subject to the personal calls of a physician," the right to indemnity for the period of such disability is not lost by the fact that the insured occasionally left the house for consultation with, or by direction of, his physician, and even, under the latter's advice, went to a distant city for a stay of several weeks.  HOOKER, J., and MONTGOMERY, C. J., dissenting.

3. Character of Disease—Question for Jury.
    Whether a given person was afflicted with consumption or
    another disease is, on conflicting testimony, a question for
    the jury.

Error to Kent; Perkins, J.   Submitted April 19, 1901.
Decided October 1, 1901.

*Assumpsit* by John Hoffman against the Michigan
Home & Hospital Association on a policy of insurance.
From a judgment for plaintiff, defendant brings error.
Affirmed.

*Wolcott & Perkins*, for appellant.

*McKnight & McAllister*, for appellee.

Moore, J.   The plaintiff obtained a judgment of $150
against defendant.   The case is brought here by writ of
error.   The plaintiff is engaged in the confectionery and
bakery business.   The defendant is a corporation organ-
ized under and in pursuance of the laws of the State of
Michigan, doing an accident and sick-benefit insurance
business, with its principal office located at the city of
Grand Rapids, Mich.   In October, A. D. 1894, the plain-
tiff joined the defendant association.   There was issued to
him a policy of insurance containing the following agree-
ment:

" *First.* If, at any time after this certificate has been in
continuous force and effect for ninety consecutive days,
said member shall, through any sickness or disease men-
tioned in Schedule A on the back of this certificate, begin-
ning after the expiration of the above term, become totally
disabled, and such disability shall, independent of all other
causes, wholly and continuously disable and prevent said
member from prosecuting any and all kinds of business,
upon satisfactory proofs to the association of such total
and continuous disability said member shall be entitled to
receive at the rate of ten dollars per week, after the first
week, during the time he is continuously confined to his
bed, or continuously confined to the house, and subject to
the personal calls of a registered physician in good stand-

ing, not to exceed thirty weeks in any one illness.  But if the same member is sick for thirty continuous days, which sickness begins after ninety days from date of certificate, he shall receive, under the terms of this certificate, payment from the date of sickness, without deduction for the first week."

The diseases covered by Schedule A, among many others, are inflammation of the lungs and *la grippe.*

The plaintiff kept up his payments from October, 1894, to the 12th day of September, A. D. 1899, paying in advance.  It is the claim of the plaintiff that, as the result of *la grippe*, he had a hemorrhage, which made it necessary for him to call a doctor, and that his illness continued so that he is entitled to recover for a period of 15 weeks. After his illness began, the company was notified of it; and one of its physicians visited the plaintiff and obtained some of his sputum, which the physician examined, and also submitted to another physician, both of whom concluded the plaintiff's disease was consumption.  On the 22d of January, 1900, the manager of the company wrote Mrs. Hoffman, among other things:

"There are two reasons why this claim, in accordance with Mr. Hoffman's policy contract, is not a legal claim against this association: In the first place, we do not, and never have, paid for consumption.  In the second place, article 1, on the face of Mr. Hoffman's policy, states that the claimant, in order to be entitled to benefits, must be entirely confined to the house.  In accordance with the above statements, Mr. Hoffman's claim against this association has been rejected."

In his testimony as a witness the manager testified, among other things:

"The reason I would not submit to paying this claim was because the physicians claimed that he had consumption.  I had arrived at the conclusion that the doctors knew what ailed him.  I refused to pay the claim because he had hemorrhage of the lungs.  The doctors said that resulted in consumption."

The articles of association provided for an arbitra-

tion in case the validity of a claim was in question.
March 19, 1900, a stipulation was filed in which it was
stated plaintiff asserted a claim which defendant disputed,
waiving an arbitration, and consenting that suit might be
brought, and that a judgment of the court should be bind-
ing upon the parties.

It is the claim of defendant that:

"In order to entitle the plaintiff to maintain a suit
upon his policy, he must show:

"1. His sickness, and its nature and duration.

"2. That it was one of the diseases mentioned in Sched-
ule A of his certificate.

"3. That these facts must be made to appear in a final
proof furnished to the association within 30 days after the
end of the sickness for which indemnity is claimed.

"4. That a period of three months, stipulated for the
investigation of the claim by the association after receipt
of the final proofs, has elapsed."

The first two of these propositions are true; but in view
of the rejection of the claim, not because of the failure to
comply with the last two propositions, but because it was
claimed plaintiff had a disease not within the terms of the
policy, and because he was not entirely confined to the
house, we think defendant cannot now insist upon a com-
pliance with the third and fourth propositions. The case
is ruled by *O'Brien* v. *Insurance Co.*, 52 Mich. 131 (17
N. W. 726); *Young* v. *Insurance Co.*, 92 Mich. 71 (52
N. W. 454).

It is insisted the court erred in charging the jury as to
the degree of illness required to entitle plaintiff to recover.
It is said by counsel:

"The standard of the degree and severity of the illness
during which the policy holder was entitled to recover in-
demnity, as expressed in the contract itself, is that he
must be continuously confined to his house, and sub-
ject to the personal calls of a registered physician in
good standing. The meaning of this language, upon its
face, is very plain. He must be so ill as to need the
attendance of a physician at his house. It is difficult to
see how the language of the contract can be construed to

mean anything else without doing violence to the plain meaning of the words employed."

The court charged the jury as follows:

"First, then, what is meant by the provision in this policy, 'continuously confined to the house, and subject to the personal calls of a registered physician in good standing?' A contract of insurance is to receive a reasonable construction, so as to effectuate the purpose for which it was made. At the same time, the proper force and effect should be given to all the language used, for the purpose of guarding the association against fraud and imposture. Provisions such as the one under consideration are inserted for this express purpose, as well as for other purposes.

"The object to be accomplished by this contract is to indemnify the plaintiff from loss from total or continuous disability to prosecute any and all kinds of business. And it is provided, in substance, that he shall receive $10 per week during the time he is continuously confined to the house, subject to the calls of a physician in good standing. That the plaintiff was totally and continuously disabled from prosecuting any business during the time claimed does not appear to be questioned by the defendant in this case. But it insists that he was not continuously confined to his house. Was he, or was he not? That is the question.

"I charge you, gentlemen, that, to constitute a compliance with this provision, it is not necessary that the plaintiff should remain in the house continuously during the entire time of disability; that to step out of doors now and then, or to occasionally go to the office of his physician, would not be a violation of this clause, or defeat plaintiff's right of recovery. It may be that an occasional airing is essential to a speedy recovery. A rule which would make nugatory a contract having for its special object indemnity on account of sickness, because the insured took an occasional and necessary airing, would be unreasonable. Was the plaintiff sick, and with a disease covered by his policy, to the extent that he was totally disabled from prosecuting any business? and was he continuously confined to his house on account of such sickness, to the extent that he was necessarily and in good faith there the larger portion of his time, and only went forth either from necessity for consultation with, or by direction of, the physician in whose charge and

care he was? An answer to this question will determine this branch of the case.   *   *   *

"So, gentlemen, I charge you that if you find from the testimony in this case that the plaintiff was continuously confined to his home on account of a sickness or disease covered by the terms of his policy, to the extent that he was necessarily, in good faith, there the larger portion of the time, and only went forth either from necessity for consultation with, or by direction of, his physician, Dr. Barth, in whose charge and care he was, if you so find, then and in that case the plaintiff is entitled to recover for the term so continuously confined, at the rate fixed in the policy,—$10 per week."

Questions of a similar character to this were involved in *Turner* v. *Casualty Co.*, 112 Mich. 425 (70 N. W. 898, 67 Am. St. Rep. 428), and *Hohn* v. *Casualty Co.*, 115 Mich. 79 (72 N. W. 1105). A reference to these cases will make an extended discussion here unnecessary. The charge of the court followed these cases.

It is said the record does not justify the suggestion of the court that plaintiff left his home and went to Chicago by the advice of his physician. Counsel must have overlooked the testimony of Mrs. Hoffman, who said:

"He had a hemorrhage at that time. It was September 11th. He was taken to his bed at that time. He was in the house from that time—oh, six weeks, I guess, or something like that—until he went to Chicago. He went down to the doctor's to get some medicine, and the doctor thought it would be a good change for him to get out, because we lived at the rear of the store, and to get away from business. He thought it would help him. He was not able to do any work during this time. I think the date when he went away was about the 25th of October. He didn't go out only just the day before, when he went for a walk, or he went away. He went to Chicago because the doctor advised him to. He thought it would be good for him."

The plaintiff was a witness and was present at the trial. There was a conflict in the testimony as to whether his illness was consumption or not. The judge said to the jury:

"If you find that the plaintiff, during the time of his disability, was suffering with the disease known as 'consumption,' I charge you that he cannot recover under any circumstances in this case, and your verdict must be, 'No cause of action.'"

The question was submitted to them. We think the case was properly tried.

Judgment is affirmed.

Long and Grant, JJ., concurred with Moore, J.

Hooker, J. (*dissenting*). The contract of the parties is explicit. The defendant has undertaken to pay weekly indemnity, not during the time that the beneficiary should be ill and until his complete recovery, but in case he should become totally disabled, and by a malady which should at the same time wholly and continuously disable and prevent his prosecuting any and all kinds of business, he was to receive indemnity during the time that he should by reason thereof be continuously confined to his bed or to the house, subject to the personal calls of a registered physician, etc. Plaintiff's own testimony shows that he was taken sick in September, and was confined to his house for six weeks; that about October 20th he went to his physician and said:

" 'I am confined up there in that place of business, where I sleep right in the store there, and I don't think it is very healthy for me.' I said: 'I have a friend living in Chicago; he wants me to come there.' He said: 'That is all right; that won't hurt you any to go there.' He said: 'You go over there; take care of yourself over there in good shape, and you will come out all right.' I was confined there all the time, only I used to take a morning walk. I went over there about the 24th—the 24th of October, I think, or September or August—the 24th or 25th of October. I went down to see Dr. Barth just the day before I started."

In my opinion, it was error to permit the jury to find a liability during this period. The policy contains the contract which the parties saw fit to make, and we should

not enlarge it by construction.   It is obvious that during this period plaintiff was not continuously confined to the house, subject to the personal calls of a physician.   It is a radically different contract from those in the cases cited.

The judgment should be reversed, and a new trial ordered.

MONTGOMERY, C. J., concurred with HOOKER, J.