LEMA JANE WILLIAMSON, *et vir,* v. NURSES' MUTUAL PROTECTIVE CORPORATION.

194 So. 643

Division A

Opinion Filed March 15, 1940

Rehearing Denied March 30, 1940

*Harry T. Gray,* for Petitioners;
*Dean Boggs,* for Respondent.

THOMAS, J.—This controversy reaches us on writ of certiorari to review the action of the Civil Court of Record for Duval County in entering a judgment in favor of the petitioners, plaintiffs in the trial court, for only that part of their claim which respondents, defendants there, admitted to be due, and the subsequent ruling of the circuit court for that county in affirming the judgment on appeal.

The action was founded on a "Registered Nurses Full Benefit Certificate" issued to Lema Jane Williamson and in force at the time of the illness for which she claimed compensation.

The real question involved is the correctness of the interpretation on the part of the trial and appellate courts of the two clauses of the insurance policy issued to the plaintiff titled "confining sickness" and "non-confining sickness." Under the first the insurer agreed to pay the insured $3.33 each day that the insured was "prevented by

reason of ANY DISEASE OR ILLNESS KNOWN TO MEDICAL SCIENCE * * * from performing each and every duty pertaining to Nursing and (was) necessarily and continuously confined to the house * * *" requiring and receiving treatment of a physician "therein at least once each week * * *." By the second clause the insurer undertook to pay the insured at the rate of $50 per month for the time the illness defined in the contract "does not confine the 'Member' to the bed, but prevents performing each and every duty pertaining to Nursing, provided the 'Member' requires and receives the professional treatment of a physician or surgeon at least once each week * * *." Limitations of the time of payments under the two classifications were five years and six months, respectively.

At the conclusion of the testimony in the case there was so little discrepancy between the accounts of the witnesses as to the true state of facts that each party to the suit made a motion for a directed verdict, both of them submitting to the court for his decision the question whether the plaintiff should recover under the first or second clause. The defendant prevailed and the court instructed the jury to render a verdict for $336.63, the amount computed to be due under the first proviso for the party from May 27 until June 7 and under the second proviso for six months.

There was no dispute about the plaintiff having suddenly contracted pulmonary tuberculosis and as a result thereof having been precluded from engaging in her profession as a nurse. When the plaintiff was first stricken with the disease she underwent treatment in her home and at a sanitarium which required her to be confined for the period from May 27 to June 7, 1937, so that her condition might be thoroughly diagnosed, and thereafter until December 7, 1937, she remained at her home calling at the office of her

physician at least once each week and occasionally consulting him over the telephone, the general treatment followed being that of rest, diet and restriction of mental and physical exertion.

It is said by the petitioners that error was committed by the judge of the civil court of record in one of two ways, viz., either by refusing to submit the case to the jury if there was a conflict in the evidence, or, in the absence of any conflict, by misapplying the proper rule of law to the facts established by the witnesses. It is on the second proposition that we will determine the matter, not only because of our own examination of the evidence but also from the attitude of the petitioner as well as the respondent, for, in asking the trial judge to decide the case as a matter of law, the litigants must have been of the same mind that the true situation was so clearly established that the judge should determine the controversy as a matter of law by applying the decisions to the facts and his interpretation of the insurance contract, without aid of a jury.

We are aware of the rule approved by this Court that in studying and construing insurance policies every effort should be bent to give force to all of the provisions contained and that in the event of ambiguities the insured will be favored over the insurer so that liberality will be indulged for the insured or for the larger indemnity. Queen Ins. Co. v. Patterson Drug Co., 73 Fla. 665, 74 South. Rep. 807, L. R. A. 1917D, 1091.

So here we are bound to give to each clause we have quoted fair consideration and adopt the construction favorable to the greater indemnity.

Our research has included an examination of various decisions cited to us where the courts apparently dealt with but one clause of policies of insurance indemnifying the

insured for illness in case there was confinement to the home (Southern Surety Co. v. Diercks, Tex. Civ. App., 250 S. W. Rep. 755; Ramsey v. General Accident, Fire & Life Ins. Co., 160 Mo. App. 236, 142 S. W. Rep. 763; Great Eastern Casualty Co. v. Robins, 111 Ark. 607, 164 S. W. Rep. 750) and to bed (National Life & Accident Ins. Co. v. Armstrong, Tenn. App., 105 S. W. Rep. 520; Hoffman v. Michigan Home & Hospital Ass'n., 128 Mich. 323, 87 N. W. Rep. 265) and the substance of these opinions is that no construction so literal will be adopted that if the policy holder was actually ill and made brief excursions to the doctor's office or even to care for his business, right to compensation would be forfeited. In the instant case, however, we have under consideration a contract intended to apply to illness of two degrees, the one so severe that the patient is "continuously confined to the house" necessitating treatment by a physician "therein," the other of lesser gravity where the sufferer is not confined "to the bed" but does need treatment weekly by a doctor.

It seems to us quite definitely established that in the inception of the disease the plaintiff fell within the class outlined in the first clause of the contract designated "confining illness." Because of an unexpected hemorrhage the attending physician ordered her immediately to bed and summoned a specialist on tuberculosis who, within a few days sent her to a sanitarium where artificial pneumothorax was administered. She then returned to her home and followed the treatment which we have outlined above.

While we are fully conscious of our duty to follow the rule that both clauses in the contract should be given a fair construction, we think that this may be logically done and a conclusion reached favorable to the insured because her illness, even in the second stage after the hospital treat-

ment and while she was following the rest cure at home, might well be designated "confining," as in the first place the principal part of the treatment was that she remain in her bed for at least seven hours during the daytime. It may be that during this rest period she took some restricted exercise in the open air, but that would not, under the liberal construction outlined in the above cases, and the ones to which we will refer later, place her ailment within the second category of the contract.

The first clause contains the qualification that the patient must receive treatment "therein," referring, of course, to the house of the patient. This particular specification loses its importance when we consider the nature of the disease. The evidence shows that it was necessary to a successful treatment of the ailment that air be admitted between the lining of the chest and the lung to relieve this organ of pressure and to limit its activity. The doctor testified that it was much safer that the injection be made in the office because a part of his equipment was a fluoroscope through which he could examine the chest cavity and determine whether the proper amount of air had been injected. The operation could not be done as safely in the patient's home as at the office because it was impossible to use the fluoroscope there.

A case very similar to this one is reported in 209 N. C. 678, 184 S. E. Rep. 695 (Thompson v. Mutual Benefit Health and Accident Association), where the Supreme Court of North Carolina reached the conclusion that in like circumstances recovery for the larger amount under the classification confining illness was just. The provision in the policy treated of was that the higher compensation would be made if the illness was of such severity that the patient was confined " 'continuously within doors' " making neces-

sary " 'regular visits therein by legally qualified physician * * *'." The clause of the contract corresponding to the "nonconfining sickness" clause in the one involved here stipulated that a lesser amount would be paid where the illness did not continuously confine the policy holder but did require " 'regular medical attention'." The insured was totally disabled by disease and remained at home; however, he took occasional short walks upon advice of his doctor and sometimes traveled the limited distance to the doctor's office. The court, following the rule of strict construction against the insurer and observing that the qualification with reference to continuous confinement was not a limitation of his conduct but a description of the illness, approved recovery for the greater benefit.

Of similar import is the decision in Wade v. Mutual Benefit Health and Accident Assn., 115 W. Va., 694, 177 S. E. Rep. 611.

These rulings support the position that an occasional departure from the home will not defeat the policy holder in the recovery for benefits due on a contract guaranteeing him payment if continuously confined.

The ailment of the petitioner in this case was of such character and the required treatment of such nature that her claim seems even more meritorious than the ones litigated in the two cases last cited. One restriction was common to both clauses of her contract; illness of such degree as to prevent her from performing her professional duties. The condition peculiar to the first was that such ailment should confine the patient to the house and require medical treatment therein at least once each week; to the second, that such illness need not confine the patient to "bed" but should require medical attention weekly.

We fully appreciate a reason for a greater compensation

in the case of a sickness so severe that the sufferer can not leave the home because of the increased expense for calls made by the doctor away from his office, the cost of a nurse's services and the like, however, that is not a controlling consideration here.

The second clause applies to one not bedridden by the disease. One receiving treatment requiring seven hours of complete rest in bed during the daytime in addition to the usual period of sleep in the night cannot be said not to be confined to bed. The authorities we have cited, and they seem logical to us, hold that one may not be deprived of compensation for a confining illness simply because of sporadic excursions of brief duration.

We have pointed out the importance to petitioner's recovery of the proper use of the fluoroscope. It could not be moved to her home although the introduction of air into the pleural cavity could be accomplished there. In these circumstances she could not be defeated of her claim for the full amount because she went to the doctor's office for this treatment.

Briefly, the cure for her disease was of two phases: Rest at home and artificial pneumothorax best administered where the fluoroscope was available. In remaining at home for the former and leaving it for the latter the condition of her sickness did not so change after the first few days that her claim fell within the other category.

We think error was committed and the judgment of the circuit court affirming that of the civil court of record is quashed with directions to reverse the judgment of the civil court of record.

So ordered.

TERRELL, C. J., and WHITFIELD, BUFORD and CHAPMAN, J. J., concur.

BROWN, J., dissents.