24 So.2d 59

**BANKSON v. MUTUAL BEN. HEALTH & ACCIDENT ASS'N.**

No. 37551.

Nov. 5, 1945.

Booth & Lockard, of Shreveport, for plaintiff-appellant.

Cook, Clark & Egan, of Shreveport, for defendant-appellee.

FOURNET, Justice. ,

This suit was instituted by Lee E. Bankson to recover from the Mutual Benefit Health & Accident Association under a contract of sick and accident insurance issued by the association on August 2, 1932, $100 a month for total disability, plus $50 a month for a period of 90 days during which he was hospitalized, and, in addition, a sum equal to the principal claim during the period of delay in making payment thereof and reasonable attorney fees of $1,000, as a penalty for the association's failure to pay his demand within thirty days thereafter without just and reasonable ground, under the provisions of Act 310 of 1910.

There was judgment in the lower court awarding plaintiff $100 a month for the

term of plaintiff's life during disability and for an additional sum of $50 a month for the 90 days he was hospitalized, but rejecting his demand for the penalties and attorney fees. The plaintiff appealed from that part of the judgment adverse to his demands and the defendant, answering the appeal, asks that the judgment in favor of the plaintiff be reversed, but, in the alternative, that if the association is liable under the policy, that such liability be held to be for non-confining illness under Part J thereof; in the further alternative, that the judgment of the lower court be affirmed.

The record shows the plaintiff was issued an accident and sickness policy by the defendant on August 2, 1932, at which time he was the president and manager of the Wellman Funeral Parlors, Inc., of Shreveport, Louisiana, all of the various functions appertaining to such establishment being under his immediate supervision and control. In addition, he did all of the buying and handled the financial affairs of the corporation. From the time the policy was issued until the latter part of December 1942, or the early part of January 1943, at which time he became unable to attend to business because of what was then thought to be a nervous breakdown but was later diagnosed by his physician on February 11, 1943, to be paresis resulting from syphilitic infection, he was apparently in good health. From February 16, 1943, and for a period of more than 90 days thereafter, he was treated in several hospitals and sanitariums and although he has since been and is now confined to

his home under the care of a physician because of total disability, under the instructions of his physician he takes walking exercises and automobile rides with a nurse or attendant.

It is the defendant's contention that the plaintiff is not entitled to recover because (1) in making application for the issuance of the policy he covenanted and agreed that the falsity of any statement therein would bar his right to recover and that he falsely answered questions 6 and 7 by stating his occupation was that of president and manager of the Wellman Funeral Parlors, Inc., and that his duties as such were financial and supervisory only when, at that time, he was actively pursuing the business of embalming and was engaged in mechanical work; (2) plaintiff's disability results from a disease antedating the issuance of the policy and the company's liability under the express terms of that provision of the contract sued on is limited to disability and loss of time resulting from a disability the cause of which originated more than 30 days subsequent to the effective date thereof; and (3) plaintiff's disability resulted from insanity, coverage for disability resulting from such cause being expressly excluded from the terms of the policy.

■ It is elementary that the defendant, having set up the foregoing as special defenses, must sustain them by a fair preponderance of the evidence.

To support the first special defense the defendant relies solely on the fact that the plaintiff was a licensed embalmer; that in the proof of claim executed for plaintiff by his wife she declared plaintiff was an "Embalmer & Funeral Director"; and the testimony of plaintiff and his wife that his duties as manager and supervisor of the business of funeral director at times brought him into contact with the bodies entrusted to his care and that in supervising the embalming of these bodies it was a necessary part of his duties that he at times assist those employed by him to do the embalming for the purpose of making the body look as well as possible; also the further statement of the plaintiff that while he had probably embalmed a body on occasions when he was short-handed or extremely busy, he could not recall any such occurrence from the time of the execution of the policy.

■ This evidence not only fails to support the contention of the defendant that the plaintiff made a false statement in his application but, in fact, fully sustains the correctness of his statement, for we cannot conceive of a person supervising the embalming of a body unless he possesses the requisite qualifications of the trade or profession and unless he gives the matter his personal attention, particularly in the correction of matters improperly attended to by those employed under him. The fact that he may have had to embalm a body in a case of emergency is, we think, clearly within the scope of his duties as manager and also within the scope of the answer, in his application for the insurance. Further, in the application itself it is stated that a false statement therein "shall bar the right to recover if such false statement is made with intent to deceive or material-

ly affects either the acceptance of the risk or the hazard assumed by the Association," and the record is totally barren of any evidence that would even tend to show plaintiff made this answer with intent to deceive the association and we do not think it can be said that an isolated or occasional embalming by one whose duties require the supervision and management of embalming in a funeral home would materially affect the risk or hazard assumed by the association in issuing the policy.

■ The same applied to the contention that plaintiff was engaged in mechanical work because the only evidence on this point is the testimony of the plaintiff and that of his wife to the effect that in his capacity as manager and supervisor of the funeral home it was plaintiff's duty to look after and maintain in working order all of the automobiles and ambulances used by them because these vehicles, from the very nature of the business, had to be kept in perfect running order at all times and required daily inspections, the plaintiff personally making such inspections because of his expert knowledge of the mechanics of an automobile. The plaintiff also stated that excepting the occasional changing of a sparkplug or tire in an emergency, all repairs on these cars were made under his supervision at the garage to which they were taken for such work.

■ The second special defense is equally without merit for there is no evidence in the record to sustain the contention that the disease from which plaintiff's disability resulted originated prior to the effective date of the contract. To sustain this defense the defendant is relying on the opinion of the physicians who attended the plaintiff and on excerpts from authorities treating on the subject of paresis. All of these sources were unanimous that it is impossible to opine a guess as to the date when plaintiff became infected with the disease that brought about the condition forming the basis of this action.

■ The defendant not only failed to sustain the burden of proving plaintiff's disability is the result of insanity, as contended in the third special defense, but it was, in fact, proved that his disability is the result of a condition brought on by syphilis. This condition is paresis, an incomplete paralysis, not insanity, although paresis generally, according to expert opinion, progressively deteriorates the brain tissues and will end in insanity if it is not arrested by proper treatment. While the evidence does show that the plaintiff suffered from delusions and hallucinations at times, particularly when he was first subjected to the severe treatments given for his particular illness, there is nothing to show how long this condition lasted or how extensive it was. All of this, when considered with the unquestionable normal status of plaintiff's mind at the time this case was tried and the other evidence in the record, shows that his disability is not due to insanity.

This brings up for our consideration the serious questions in the case, i. e., (1) whether plaintiff is entitled to receive disability payments for confining illness under Part I or for non-confining illness under

Part J of the policy, and (2) whether plaintiff is entitled to the penalties claimed under Act 310 of 1910.

Part I provides monthly benefits of $100 for total disability and loss of time resulting from disease "which confines the Insured continuously within doors and requires regular visits therein by legally qualified physician," while Part J limits such payments to $50 a month where the disability "does not confine the Insured continuously within doors but requires regular medical attention."

█ As pointed out in *29 American Jurisprudence* 883, Section 1171, "While some courts have given a literal construction to a requirement that the insured be confined to the house, most courts have adopted the view that the provisions of a health or accident policy requiring the insured to be confined to the house do not have to be literally complied with in order to entitle the insured to indemnity. According to these courts, a person may be totally incapacitated and confined to his house within the meaning of a policy although he takes some exercise outdoors or visits his physician, provided he is entirely incapacitated for work or business on account of his injury or illness." See, also, Annotations in 49 A.L.R. 965; 18 Ann.Cas. 1111; Ann.Cas.1915A, 262; Ann.Cas.1918C, 531; 23 L.R.A.,N.S., 359; 42 L.R.A.,N.S., 700; L.R.A.1918B, 998; and 14 R.C.L.1318, Section 492; Vol. 1 Appleman, Insurance Law & Practice, 809, §§ 652 and 653; 7 Couch on Insurance 5791, Section 1678; Jennings v. Brotherhood Accident Co., 44 Colo. 68, 96 P. 982, 18 L.R.A.,N.S., 109, 130 Am.

St.Rep. 109; Garvin v. Union Mut. Casualty Co., 207 Iowa 977, 222 N.W. 25, 61 A.L.R. 633; Home Protective Ass'n v. Williams, 151 Ky. 146, 151 S.W. 361, Ann. Cas.1915A, 260; Metropolitan Plate Glass & Casualty Ins. Co. v. Hawes' Ex'x, 150 Ky. 52, 149 S.W. 1110, 42 L.R.A.,N.S., 700; Hoffman v. Michigan Home & Hospital Ass'n, 128 Mich. 323, 87 N.W. 265, 54 L.R.A. 746; Breil v. Claus Groth Plattdutschen Vereen, 84 Neb. 155, 120 N.W. 905, 23 L.R.A.,N.S., 359, 18 Ann.Cas. 1110; Hines v. New England Casualty Co., 172 N. C. 225, 90 S.E. 131, L.R.A.1917B, 744; Stewart v. Continental Casualty Co., 141 Wash. 213, 250 P. 1084; Wade v. Mutual Ben. Health & Accident Ass'n, 115 W.Va. 694, 177 S.E. 611; Mutual Ben. Health & Accident Assn. v. McDonald, 73 Colo. 308, 215 P. 135; Williamson v. Nurses' Mutual Protective Corporation, 142 Fla. 225, 194 So. 643; Thompson v. Mutual Ben. Health & Accident Ass'n, 209 N.C. 678, 184 S.E. 695; Albert v. Mutual Benefit Health & Accident Ass'n, 350 Pa. 268, 38 A.2d 321; Great Eastern Casualty Co. v. Robins, 111 Ark. 607, 164 S.W. 750; Ætna Life Ins. Co. v. Willets, 3 Cir., 282 F. 26; Interstate Business Men's Accident Ass'n v. Sanderson, 144 Ark. 271, 222 S.W. 51; Columbian Relief Fund Ass'n v. Gross, 25 Ind.App. 215, 57 N.E. 145; Van Dusen v. Interstate Business Men's Ass'n, 237 Mich. 294, 211 N.W. 991; Jentz v. National Casualty Co., 52 N.D. 688, 204 N.W. 344; Mutual Benefit Ass'n v. Nancarrow, 18 Colo. App. 274, 71 P. 423; and Ramsey v. General Accident Fire & Life Ins. Co., 160 Mo. App. 236, 142 S.W. 763.

But counsel for the defendant, relying on the case of Clesi v. National Life & Accident Ins. Co., 195 La. 736, 197 So. 413, contends plaintiff is not confined continuously within doors because (1) he takes automobile rides, twice riding as far as Mansfield, Louisiana; and (2) takes walks, including those to town to visit his doctor and for shaves at his barber shop.

In our more recent decision in the case of Powell v. Liberty Industrial Life Ins. Co., 197 La. 894, 2 So.2d 638, 640, we pointed out that "The Clesi case is authority for the proposition that under a policy providing for two kinds of indemnity, one for house-confining, and the other for non-house-confining, illness, recovery will be allowed only for the latter case *where the facts show that the insured was not only not confined to his house, but was able to attend to certain business matters.*" (Italics ours.)

The facts in the Clesi case showed that while Clesi was totally and permanently incapacitated to follow his usual trade [195 La. 736, 197 So. 414], "he testified at the trial that he owns four pieces of property which he leases; that he keeps a desk in the front room of his shop and requires his tenants to pay rents to him there; that he keeps a cash book and goes to the bank about once a week to deposit the amounts collected; that he visits his property to see that it is kept in repair, and that, when repairs are needed, he has the work done by others and then goes to the houses to see that the work is properly done. *According to his own testimony and that of others, he is not now, nor has he been at any time*

*since March 1, 1938* (from which date he claimed disability), *confined to his house.*" Predicated on these facts, the court held: "Clearly, therefore, he is not entitled to the indemnities allowed under Section 'I' of the policy, which are allowed only for 'confinement periods.'" Consequently, the expressions found in that opinion and relied on by counsel for defendant to support the association's contention are mere obiter, not being necessary for the decision. (Italics and brackets ours.)

Unlike the Clesi case, the uncontroverted evidence in the record in this case shows that the plaintiff, from the time he first visited his physician on February 11, 1943, until this suit was filed on July 23, 1943, was, except for trips to and from his home and the various hospitals and sanitariums he attended, continuously confined in these institutions or his home. The same may be said of the time between the date the suit was filed and its trial in December of 1943, the only exception being that under the instructions of his physician he was allowed to leave the confines of his home with a nurse or attendant for the purpose of taking an automobile ride and walking exercises, in order to prevent a general weakening of his muscles and breakdown of his system. The record also reveals that subsequent to the filing of this suit but before the trial thereof, the plaintiff completely lost his eyesight.

According to the testimony of Dr. A. A. Herold of Shreveport (his physician) at the time this case was tried the plaintiff was substantially confined within doors, he only being allowed to leave his home

with a nurse or attendant. The evidence also shows that while the plaintiff was at home he was attended by two nurses. They remained with him until October, when they were replaced by Mrs. Beatrice White, his constant attendant since that time. Mrs. White stated the plaintiff was not only not permitted to leave the house alone but that he could not even leave his room without assistance.

Under these particular facts we do not think the conditions of the policy were violated. It was never the intention of the parties that the clause in controversy should be given an unreasonable or absurd construction and to hold otherwise (by giving it a strict interpretation), would be to bar the plaintiff from recovering because of his removal from his home to a hospital in an ambulance. We think the parties intended by this clause, and we so construe it, that the insured would be permitted to recover under Part I of the policy if his disability by reason of illness was such that it would ordinarily require confinement within doors, and the fact that the patient is instructed or allowed to leave the confines of his home for the purpose of getting fresh air and sunshine, as in the case of tuberculosis, or to take walks to prevent atrophy and weakness of the muscles, as in this case, does not necessarily deprive the insured of his right to recover under Part I of the contract. Having reached this conclusion, it is immaterial whether in taking these walks the plaintiff went around the block to the barber shop, or to the doctor's office. The fact that he was treated in the doctor's office is likewise immaterial

under the facts of this case for it appears from the record that the type of illness from which he was suffering necessitated a special treatment that was neither available nor convenient in the home.

We think too that under the facts of this case the plaintiff is entitled to recover an additional indemnity for a period of 90 days at the rate of $50 a month under Part K of the contract, for hospitalization.

We now pass to plaintiff's claim for penalties under Act 310 of 1910.

The legislature has made it the public policy of this state that all policies or contracts of life, health, and accident insurance written in this state must provide for payment of indemnities due thereunder within 30 days from written notice and proof of the sickness or accident under the penalty that "the insurance company guilty of such delay in payment, unless upon just and reasonable grounds, shall pay to the assured, * * * double the amount due under the terms of the policy or contract, during the period of delay, with attorney's fees to be determined by the tribunal before whom suit is instituted." Section 3 of Act 310 of 1910.

The defendant claims, and seriously argued both orally and in brief, that the association should not be penalized for having refused plaintiff's claim for it was in good faith and justified in refusing payment in this case for the reasons set out in its special defenses under the particular facts of the case, and, in any event, that it had the right "to secure a judicial determination" of the point whether insanity resulting

from the disease suffered by the plaintiff was excluded from coverage by the policy and "to hope" this court would follow the holding in the case of Moss, Guardian of Chikaylo v. Mutual Benefit Ass'n, 89 Utah 1, 56 P.2d 1351, where such disability was held to come under the policy provision excluding insanity.

As was pointed out by this court in the very recent case of Campasi v. Mutual Benefit Health & Accident Ass'n, 207 La. 758, 22 So.2d 55, 57, "Whether such a delay is 'upon just and reasonable grounds' depends upon the circumstances peculiar to the case in hand."

In the instant case the attending physician diagnosed plaintiff's case on February 11, 1943, and almost immediately thereafter hospitalized him for treatment. From that time until September 13, 1943, he was confined in hospitals except for the very short intervals when he was at home, and although the defendant was given written notice and due proof of his disability on March 1, 1943, and these demands were repeated on several occasions, the defendant not only failed to make any payments within 30 days after such notice and proof, but it at no time denied liability or gave any indication that it would do so or that it would set up any special defense until its answer was filed on October 13, 1943, although more than a month prior to such filing the defendant's representative from Omaha, Nebraska, was in Shreveport and offered to settle the claim by compromise. When it did deny liability, it did so without an investigation of any kind to justify the merits, if any, of its position.

As hereinabove demonstrated, the defendant's contention that it was justified in making the special defense that plaintiff had answered falsely questions propounded to him in his application for the insurance because plaintiff's wife, in making out the proof of claim, answered one of the questions by stating he was an "Embalmer & Funeral Director" is untenable, for the slightest investigation on the part of the association would have apprised it of the exact nature of plaintiff's supervisory duties at the funeral home.

Even had the basis for defendant's contentions that the disease antedated the effective date of the policy and that the disability of the plaintiff resulted from insanity been grounded on some reasonable premise, we think an investigation on the association's part would also have shown the true facts in these instances. If such investigation was made, the presumption is the results thereof were against the defendant for it not only failed to give the court the benefit of such findings, but also failed to call a single witness to the stand in support of such special defenses. Had the association seriously thought it was justified in refusing payment, certainly some effort would have been made to substantiate these defenses on the trial of the case other than mere resort to the cross-examination of plaintiff's witnesses. Of course the association was entitled to its hope that we might follow the holding in the Moss case, but, as was also pointed out in the Campasi case, "not at the expense of the assured—except upon just and reasonable grounds."

■ It is our opinion, therefore, that the reasons advanced by the defendant for its failure to pay were not such just and reasonable grounds "as to put a reasonable and prudent business man on his guard," under the provisions of Act 310 of 1910. Consequently, plaintiff is entitled to recover an additional $100 a month during the period of delay in making the payment due under the policy, plus an additional sum of $150 for the time plaintiff was confined in hospitals, and reasonable attorney fees.

■ While plaintiff has asked for a reasonable attorney fee of $1,000, the amount he agreed to pay his attorneys according to the allegations of his petition, the evidence fails to show the existence of such agreement. The only evidence offered by plaintiff to substantiate this allegation was the testimony of an attorney experienced in this type of litigation This attorney fixed the value of the services rendered at between $750 and $1,000. This evidence was not controverted. Taking this testimony into consideration, together with counsel's efforts in plaintiff's behalf as reflected by the record before us, we think a fee of $750 is reasonable compensation for such services.

In their answer to this appeal counsel for the defendant have suggested that the judgment rendered in the lower court be clarified to show that the association's obligation is limited to plaintiff's period of disability. The judgment, we think, unmistakably so limits defendant's liability and needs no clarification.

For the reasons assigned, the judgment of the lower court in so far as it rejects the demands of plaintiff for penalties under Act 310 of 1910 is annulled and set aside and the judgment is amended accordingly adjudging and decreeing that there be judgment in favor of Lee ·E. Bankson and against the Mutual Benefit Health & Accident Association of Omaha, Nebraska, for an additional sum equal to the amount awarded him in the lower court under the terms of the contract during the period of delay in making the payments due, all with legal interest from their respective due dates, and for the further sum of $750 for attorney fees. As thus amended the judgment of the lower court is affirmed, the defendant to pay all costs.

O'NIELL, C. J., takes no part.