JANVIER, Judge.
Plaintiff, having lost both of his legs by amputation, brought this suit on two policies of insurance originally issued by Tharp-Sontheimer Life Insurance Company, now Delta Life Insurance Company.
The first of these policies was dated May 31, 1943, and the second, December 27, 1943. Each policy provides that, upon receipt of due proof of death, the company agrees to pay the amount of insurance stated in Schedule A covering life insurance in the sum of $250. Each policy also provides that, in addition to the insurance set forth in Schedule A, the amounts listed in Schedule B are also payable should death by accidental means occur, or should disability by specific loss occur “as described in Sections A or B hereinafter.” Each of the policies-then provides, under Schedule B, for recovery for death by accidental means of $250; for irrevocable loss of sight of both eyes-$250; for loss of both hands $250; for loss of both feet $250; for loss of one hand and one foot $250; for loss of one hand $125;. for loss of one foot $125.
Then follow Sections A and B, Section A being headed “Provisions As To Death By Accidental Means,” and Section B being headed “Provisions As To Disability By Specific Loss.” Under Section B, among other things, it is provided that
“upon receipt of due proof that the Insured has suffered the loss by severance of one hand, or of one foot, the •Company will pay to the Insured, * * * the amount provided for the specific loss as shown in Schedule B * *
And in Section B it is also provided that
“These additional benefits shall be granted only if such loss occurs * * * solely as the result of disease or injury contracted or sustained after the date of this policy * ■* *.”
Plaintiff lost his right foot by amputation on July 22, 1948, and his left foot by amputation on September 22, 1950. On May 1, 1951, this suit was filed for the loss of both feet, plaintiff claiming $500 or $250 on each policy and also claiming $500 on the allega *921 tion that the “refusal to pay by defendant corporation herein has been arbitrary and capricious.”
The defendant company filed answer in which it averred that if any claim for the loss of the right foot ever existed it had been lost by prescription because of the fact that the policy contains a provision to the effect that
“no suit shall be maintainable to enforce the provisions of this contract unless such suit shall be commenced within one year next after the death or disability of the person insured under this Policy.”
In its answer defendant also averred that both feet had been amputated as the result of a disease which had been in existence prior to the issuance of both policies, and that therefore there could be no recovery for the loss of either foot. This contention was based on the above-quoted policy provision that there could be no recovery under Schedule B of the policy, unless the disease which caused the loss had been contracted or sustained “after the date of the policy.”
When the matter came to trial in the district court, counsel for plaintiff sub-' mitted no evidence to show just when the disease which caused the amputation of the left leg manifested itself. In other words, plaintiff offered no proof to show that the disease, which had made the amputation of the left leg necessary, had been contracted after the issuance of the policies. And counsel for defendant contend that plaintiff has not borne the burden of bringing himself within the coverage of those policies; that the provision under -Schedule B, which requires that the disease which causes the specific loss must come into existence after the issuance of the policy, should be construed as a part of the coverage and not as an exception thereto, and that therefore the' burden is on the plaintiff to show when the disease manifested itself and that it was not in existence before the policy was issued.
Counsel for plaintiff, on the other hand, maintain that that provision constitutes an exception to the coverage of the policy and therefore must be set up as a special defense and that consequently the burden of showing the facts must be borne by the defendant.
Defendant did not rely entirely on the contention that plaintiff had not borne the burden of proof by failing to show that the disease manifested itself after the issuance of the policy, but itself offered evidence which defendant contends shows that the disease (diabetes) made both amputations necessary, and had manifested itself long before the issuance of both policies.
So far as the claim for the loss of the right foot is concerned, it is now conceded that that claim is prescribed.
There was judgment in favor of plaintiff for $125 on each policy, with legal interest from judicial demand and costs.
Defendant has appealed, and plaintiff has answered the appeal praying that the amount should be increased to $250 on each policy, the additional amount covering penalty for the capricious refusal to pay the face values of the policies.
The question of where lies the burden of proof in such -cases as this is an interesting one. It is well settled that the plaintiff must bear the burden of showing all facts required to bring the loss within the coverage of the policy, and it is equally well settled that the burden is on the defendant to show all facts which may be relied on where it is contended that, because of an exception or proviso in the policy, no recovery may be had. The question here is whether the proviso that the disease, which causes the loss, must come into existence after the issuance of the policy, is a part of the coverage or is an exception thereto.
It is very necessary that we reach a conclusion on this question of where lies the burden of proof. Although, as we have already shown, defendant contended that it was under no obligation to show that the disease which made the amputations necessary, antedated the issuance of the policy, in an abundance of caution it went further and tendered evidence which it contends shows conclusively that the disease antedated the policies and did make the amputations necessary. When this evidence was introduced by defendant, plaintiff placed on *922 the stand his own medical expert who gave evidence which indicated that, in his opinion, the cause of the loss of the legs was not the disease which had manifested itself before the policies were issued.
If we could read the record without giving any consideration to the question of where the burden of proof may lie, we would reach the conclusion that in all probability the fundamental reason for the loss of both of plaintiff’s legs was the fact that, for some years before the issuance of the policies, he had been suffering with diabetes, and that diabetes was the initial cause of the ultimate loss of his legs. However, we feel that, although in all probability this was the case, we are unable to' say that the record establishes this by a preponderance of the evidence. Nor can it be said that the evidence tendered in rebuttal by plaintiff shows by a clear preponderance that the cause of the loss was not the disease which had undoubtedly manifested itself before the policies were issued.
Since neither has shown by a clear preponderance the facts upon which we could render a decision one way or the other, it becomes necessary that we determine just who bore the burden of proving the facts necessary to a favorable decision.
Plaintiff cites and confidently relies upon the case of Bankson v. Mutual Ben. Health & Accident Ass’n, 208 La. 1008, 24 So.2d 59, as authority for the view that the terms of such a policy place upon the defendant the burden of establishing what plaintiff designates as a special defense, that the disease antedated the issuance of the policy. At a first reading, that opinion seems to be authority for that view. However, an examination of the record in that case shows that, as a matter of fact, the question of where lay the burden of proof was not really presented nor considered. As a matter of fact, there plaintiff alleged that the disease did not antedate the policy and then offered proof to that effect. The defendant in its answer averred that the disease had antedated the policy and submitted proof which the Court said was not sufficient to sustain the special defense. Obviously then what was presented in that case was not whether, in any event, the burden rested upon the defendant, but whether, under the facts shown, the defendant’s proof had overcome that offered by the plaintiff.
We have no doubt that in the preparation of such a policy an insurance company may provide that the burden shall be upon the insured to establish all necessary facts on which coverage is based. But we are not at all sure that in the particular policies which are before us the clauses should be interpreted as placing upon the insured the burden of offering such proof.
We concede that the policies may be interpreted either way, but it is our conclusion that, as the policies are written, and since they were written -by the insurer and therefore any ambiguity or uncertainty should be interpreted against it, they create the impression that all that the insured need prove is that he has suffered the specific loss set forth in Schedule B, and that, when this proof has been offered, the burden shifts to the defendant to prove that, because of the particular provisions of the policy, there should be no recovery.
If this conclusion is antagonistic to the well established doctrine that, in cases involving accident policies, the burden is on the plaintiff to establish that the loss resulted from accident, then all we can say is that the policies involved here seem to justify the interpretation which we have placed on them, and we now hold that where a policy, in large type and as a part of the coverage, provides that a specific amount will be paid for a specific loss, and then, in much smaller type and in another paragraph headed “Provisions”, stipulates that the payment will be made only if the disease which causes the loss comes into being after the issuance of the policy, the burden is on the defendant to show that the disease was in existence before the policy was issued and that that same disease caused the loss.
We therefore conclude that defendant has not proven by a preponderance of the evidence that the loss was caused by a disease which antedated the policy and that, accordingly, the face value of each of the policies is due.
*923 Clearly this is not a case in which the penalty for arbitrary refusal to pay should be imposed.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.