# Third District Court of Appeal

## State of Florida

Opinion filed June 5, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-0792
Lower Tribunal No. 22-4224
_____

## Ascendant Commercial Insurance, Inc.,
Appellant,

vs.

## Bolufe Enterprise, Inc.,
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Carlos Lopez, Judge.

Koleos Rosenberg Dionisio PL, and Kimberly K. Dionisio and Alan S. Rosenberg (Fort Lauderdale), for appellant.

Carlos Santisteban, Jr., P.A., and Carlos Santisteban, Jr.; Burlington & Rockenbach, P.A., and Bard D. Rockenbach (West Palm Beach), for appellee.

Before SCALES, MILLER, and LOBREE, JJ.

SCALES, J.

In this dispute about the interpretation of a commercial automobile insurance policy, Ascendant Commercial Insurance, Inc. ("Ascendant") appeals an April 3, 2023 final summary judgment in favor of Ascendant's insured, appellee Bolufe Enterprise, Inc. ("Bolufe"). The trial court also denied Ascendant's cross motion for summary judgment. The trial court construed the subject policy as entitling Bolufe to recover $200,000 for one of Bolufe's cars that was damaged by a fire. We reverse the final judgment and remand to the trial court to enter summary judgment on Ascendant's cross motion, because the insurance policy contains an express $50,000 per vehicle coverage limit for automobiles damaged by fire.

**I. Relevant Background**

A. <u>Bolufe's Insurance Claim</u>

Ascendant insured Bolufe, the operator of an automobile dealership, under a garage insurance policy that provided various coverages that commenced on November 20, 2021 (the "Policy"). The record reflects that Bolufe paid an additional premium for an endorsement to the Policy for $200,000 in fire and theft coverage ("Fire Endorsement"). On February 5, 2022, Bolufe purchased a 2021 McLaren GT, a car of considerable value, from a dealer in Dallas, Texas. While the McLaren was being transported

from Dallas to Miami, it was involved in a fire, rendering it a total loss.[1] Bolufe made a claim under the Policy for $200,000, asserting that the Fire Endorsement provided Bolufe $200,000 in coverage for the McLaren. Ascendant offered Bolufe $50,000, which Ascendant maintained was the limit of its liability for a fire-damaged vehicle.

B. Proceedings Below

Bolufe brought a first-party insurance action against Ascendant, alleging, among other things, that Ascendant breached the Policy by Ascendant's refusal to pay what Bolufe alleged it was due under the Policy.[2] With no material facts in dispute, the parties filed cross motions for summary judgment, with each party arguing competing interpretations of the subject Policy. After conducting a March 2, 2023 hearing, the trial court denied Ascendant's motion, and ruled in favor of Bolufe. In construing the Policy, the trial court determined that "the Fire and Theft Endorsement sets a $200,000 limit of insurance, whether for a single auto or a single event." While the trial court did not find the Policy ambiguous, it noted that if

---

[1] There is no dispute that the Policy covered damage to one of Bolufe's vehicles while in transit.

[2] In its operative second amended complaint, Bolufe also asserted a negligence claim against a co-defendant, the automobile transport company, which is not a party in this appeal.

3

Ascendant meant for the Fire Endorsement to have a different meaning, Ascendant "failed to clearly and unambiguously draft the subject policy . . . to achieve this result." Ascendant timely appealed from the trial court's April 3, 2023 final summary judgment.

**II. Analysis[3]**

A. <u>Rules of construction</u>

Florida courts construe an insurance policy like any other contract, giving effect to the policy's plain language. <u>Swire Pac. Holdings, Inc. v. Zurich Ins. Co.</u>, 845 So. 2d 161, 165 (Fla. 2003); <u>World Fin. Grp., LLC v. Progressive Select Ins. Co.</u>, 300 So. 3d 1220, 1222, 1223 (Fla. 3d DCA 2020) ("An insurance contract is construed in accordance with its plain language. . . . [W]e look at the text of a provision of a contract of insurance, and if the text is clear and unambiguous – as it is in this case – we give the language its plain meaning."). That an insurance contract might be complex does not in itself make the contract ambiguous. <u>Swire Pac. Holdings</u>, 845 So. 2d at 165. Further, "[w]hen construing an insurance policy to determine coverage the pertinent provisions should be read *in pari materia*." <u>Express</u>

---

[3] This Court reviews a summary judgment *de novo*. <u>Ibarra v. Ross Dress for Less, Inc.</u>, 350 So. 3d 465, 467 (Fla. 3d DCA 2022). This Court also reviews a trial court's interpretation of an insurance policy *de novo*. <u>St. Paul Fire & Marine Ins. Co. v. Llorente</u>, 156 So. 3d 511, 512 (Fla. 3d DCA 2014).

Damage <u>Restoration, LLC v. Citizens Prop. Ins. Corp.</u>, 320 So. 3d 305, 309 (Fla. 3d DCA 2021) (quoting <u>Nationwide Mut. Fire Ins. Co. v. Olah</u>, 662 So. 2d 980, 982 (Fla. 2d DCA 1995)). In other words, the provisions of an insurance contract must be construed together in order to illuminate the meaning of the entire insurance contract. <u>Swire Pac. Holdings</u>, 845 So. 2d at 166. We construe the relevant provisions of the subject Policy against the backdrop of these rules of construction.

B.    <u>The Operative Policy Provisions</u>

The Policy's schedule of coverages shows that Bolufe paid separate premiums for several types of coverage, including $1,205.00 for the Fire Endorsement.  Under the heading "Limit of Insurance For Each Location," the Fire Endorsement reads: "$200,000 Limit of Insurance."[4] The last sentence of the Fire Endorsement reads as follows: "The Physical Damage Coverage provisions apply to the coverage indicated in the Schedule." Hence, the Fire Endorsement expressly adopts the Policy's Physical Damage Coverage provisions.

The Policy's Physical Damage Coverage provisions constitute the Policy's Section IV, and section IV.C. governs the limits of Ascendant's liability for an insured's physical damage claim. The provision relevant to this

---

[4] Our record indicates that Bolufe operates its dealership at one location.

case is Section IV.C.1.a., which provides that the most Ascendant will pay for a loss premised on physical damage is the actual cash value of the vehicle at the time of the loss.

Critically, though, the Policy contains a separate, distinct endorsement – bearing the heading, "Limits and Deductibles" – that expressly deletes the Policy's Section IV.C.1 in its entirety and replaces the provision with one that reads as follows:

> C. LIMITS OF INSURANCE 1 is deleted and replaced by the following:
>
> 1. The most we will pay for "loss" to any covered "auto" is the lesser of:
>
>    a. The actual cash value of the stolen or damage [sic] property, up to a limit of $50,000 per "auto" or
>
>    b. The amount necessary to repair or replace the property with like kind and quality[.]

C. Discussion

As relevant to this case, the parties bargained for and agreed to two endorsements to the Policy. The Fire Endorsement added coverage for theft of, and damage caused by fire to, Bolufe's automobiles. The Fire Endorsement contained a $200,000 per location insurance limit and it expressly incorporated the Policy's Physical Damage Coverage provisions. The other endorsement – bearing the heading "Limits and Deductibles" –

6

amended the Policy's Physical Damage Coverage provisions to provide a per automobile insurance limit of $50,000.

These two endorsements are not in conflict and do not render the Policy ambiguous. Read together, as we are required to do,[5] the Fire Endorsement provides Bolufe with insurance coverage for theft and fire, and the "Limits and Deductibles" endorsement limits coverage for an insured's automobile to the lesser of the vehicle's actual cash value – not to exceed $50,000 – or the vehicle's replacement/repair cost. Although it is not disputed that the McLaren's value was far greater than $50,000, Ascendant's liability under the Policy for the vehicle's total loss was limited to $50,000.

## III. Conclusion

Because the plain language of the Policy limited coverage for an automobile damaged by fire to a maximum of $50,000, we reverse the final judgment and remand the case to the trial court to enter summary judgment to Ascendant on its cross motion for summary judgment.

Reversed and remanded with instructions.

---

[5] See Express Damage Restoration, 320 So. 3d at 309.